## DAVID COFFMAN, RESPONDENT, *v.* THOMAS ROBBINS, APPELLANT.

WATER RIGHTS—PAROL AGREEMENT.—Where a stream of water which passes
through the lands of different persons is divided by them by a parol
agreement, and each party repairs ditches, and receives and cares for his
share of such water, such agreement will be enforced in a court of equity.

IDEM—NOTICE.—Where one buys land, he is presumed to buy with notice of
the water rights in use on the premises.

IDEM—LOWER OWNER ON STREAM.—When a stream of water flows through
the lands of different persons in a well-defined channel, the lower owner
on the stream has a right to have the water flow through his lands undi-.
minished, except so far as the upper riparian owner may use the same for
the use of his premises for domestic use, stock, and reasonable irrigation.

APPEAL from Umatilla County.

This is a suit by the respondent to enjoin the appellant
from diverting any part of a certain stream of water from
respondent's premises, and from preventing any more than
one third of such flowing upon the respondent's premises
at the southeast corner of his farm, and for damages.

The respondent alleges that two springs rise on the lands
of appellant, the waters of which unite and form a stream
which runs through the lands of Daniel Simmons to a point
distant about one hundred yards south of the north bound-
ary of Simmons' farm, at which point the waters divide and
form two separate channels, both of which channels run on
to the premises of the appellant Robbins, in the said north-
west quarter of section 6, near the south-west corner of said
land, and from there, when unmolested, passed on to the
north-east quarter of section one, of respondent's land, in
several different channels, one of which channels passed on
to said land at a distance of about two rods from the south-
east corner of his farm, which channel carried about one
quarter of the water running from said springs. The sec-
ond and principal channel flowing from said springs passed
on to respondent's land at a distance of about twenty-six
rods from his south-east corner, which channel carried about
one half of the water flowing from said springs; and two
smaller channels formed by the waters of said springs passed
on to his land near the center of his east line, which said
two last-mentioned channels carried about one quarter of
the water flowing from said springs; and that all the water
flowing from said springs passed on to respondent's land in
said four channels, and from there flowed in a northerly direc-
tion in several different channels, until they reached the west
half of his home farm, where they again united and formed
one main channel, which passed off from his said home

farm on the west side thereof, from whence it ran on to some railroad land which is in the possession of respondent, and from thence to some land owned by one James M. Leezer. That said waters, before any ditches were dug, caused about sixty acres of respondent's land and about forty acres of appellant's land to be swampy, and to be grown over with tules.

That during the year 1864, two ditches were cut, distant about five feet apart in a north and south direction, on the line dividing the home farm of respondent from the northwest quarter, section six, of appellant, which said last-described land was then the property of one John McCoy, and that a wall of sod and dirt was built between said ditches, said wall being about five feet thick at the bottom, about four and a half feet high, and running up tapering to about the width of two feet at the top, and that said ditches were cut and wall erected for the purpose of forming a fence between the premises of respondent and the said John McCoy. That said wall prevented the water from said springs' from flowing on to respondent's land in any of its natural channels, but that by mutual consent and agreement between himself and John McCoy, and other persons who afterwards owned said land adjoining on the east, he had the privilege of bringing all the water that he desired to make use of on to his premises through a ditch which runs on to his land at his south-east corner, and which ditch extended in an east direction from said south-east corner between the lands of appellant and Daniel Simmons.

That appellant acquired title to the land adjoining respondent on the east in 1873, and that at intervals since said time he has diverted about one half of the water flowing from said springs away from the lands of the respondent, and that said waters so diverted were never allowed to flow on to respondent's home farm, but passed around the same on other lands adjoining thereto, and that a large portion of said waters were flowed by appellant into a lane through which a country road had been located, and that respondent never consented to said diversion, but frequently objected thereto.

That in February, 1876, appellant diverted all the water flowing from said springs away from respondent's south-east corner, by means of ditches which he dug for that purpose and by deepening ditches which had already been dug, and caused it to flow into the most northerly of the channels formed by the spring branch, from whence it flowed on to respondent's land, through an aperture in the wall between the lands of respondent and appellant, which had been caused by a flood of the Umatilla river in the year 1876, and which aperture had never been filled with dirt, but across which a fence built of rails and poles had been constructed. That respondent has thereby been deprived of the use of said water for the purposes of irrigation and watering stock, and has been greatly damaged by means of the increased flow of water upon his premises in said northerly channel, etc.

Appellant, in his answer in substance, claims that the waters of the spring branch, prior to the digging of ditches, all reunited on his land and flowed on to respondent's land, through the most northerly of the channels described in the complaint, and that the water which flowed northerly on respondent's south-east corner came from a slough which has its source in Daniel Simmons' farm, and which does not naturally unite with the waters of the spring branch until after it passes on to respondent's land. That Daniel Simmons and respondent, acting together, have constructed ditches on Simmons' land, which have changed the natural flow of the waters of the spring branch, and that appellant has thereby been injured. That Simmons has built a dam across the spring branch, and backed up the water into appellant's cellar. That respondent, about two years ago, constructed an embankment across the north channel described in the complaint, by means of which the waters of the spring branch have been backed up on appellant's land and his meadow overflowed, to his damage, etc.

*J. H. Turner*, and *Dolph, Bronaugh, Dolph & Simon*, for appellant.

*Lucien Everts*, for respondent.

By the Court, Boise, J.:

There are in this case no legal propositions which present any difficulty. If the stream of water in controversy was running in a well-defined channel through the lands of the respective parties, they would each have a right to have it continue to flow in its natural course without diminution, except so far as the same might be legally used by each riparian proprietor, while passing through his premises, for domestic use, stock, and reasonable irrigation. But, from the evidence, it appears that this stream, before its flow was disturbed by ditches, spread out on the lands of both parties into a swamp, with no fixed and definite channels, especially when the water was flush. It entered the lands of the appellant by two channels, and the evidence is conflicting and uncertain which carried the most water at the time the first ditch was made, which is marked on the map in the brief as ditch S. We think, however, that the evidence tends to show that prior to the making of this ditch, which was about the year 1861, some of the water flowed about the south-east corner of Coffman's land, and stood in stagnant sloughs during the dry season. This appears from the direct testimony of some of the early settlers, and from the testimony of the surveyor, F. E. Habersham, who shows from the elevations of the ground that the water could flow about said corner, and he traces old channels or swales leading around that point; and the undisputed fact that this stream spread out and made a swamp, which produced tules or rushes near this locality, shows that the water must have gone there and remained during the season. The testimony, however, tends to show that before ditch S was made, the surplus water flowed on in different channels across the lands of appellant, and most of it passed on to the land of respondent, at or about the point marked "levee" on the map.

But the evidence is very uncertain as to which channel then carried the most water. This ditch S was cut across the west channel and dammed it up, so that from that time on for many years the water ceased to flow down the west

channel, and consequently had a tendency to obliterate all the channels which formerly carried the water about respondent's south-east corner. It appears that the respondent soon after ditch S was dug extended it to his south-east corner and the water ran there for years. It was afterwards agreed between the respondent and Martin Robbins, who owned the land now owned by appellant, that respondent might divert a part of the water through ditch S to his south-east corner, and Martin Robbins might convey a part of the water to his barn, which was done by ditch E, he (Robbins) joining said ditch with Simmons at his line. This continued for some five years, when the parties quarreled about the water, each claiming a right to use it all; Coffman claiming a right to take it all to his south-east corner, and Robbins claiming the right to have it all flow through his land wherever he chose. It is claimed that if Coffman had been taking a part of the water to his south-east corner, it was by a license which was subject to be revoked by Robbins at any time. It is also claimed that if he had been taking the water by an agreement to divide the water which had been acted on by both parties for a number of years, such agreement is by parol and not binding, being void by the statute of frauds. And also, if it was binding so far as to be upheld by a court of equity, both parties having repudiated it when they quarreled, it became void by their acts.

We think that if the parties divided this water by mutual consent, and then, on pursuance of such agreement, Coffman dug ditches to receive one half of it and dispose of it at his south-east corner, and Robbins did the like on his land, and each took and enjoyed the water for years under this agreement, such a contract should be upheld in equity, for the agreement was a legitimate and proper one, and as the consideration (which was the digging the ditches and taking care of the water) was paid and the possession given, the agreement could be enforced in equity; and if these equitable rights once attached they would not be destroyed by a mere quarrel between the parties, for neither gained or lost a right by this disagreement. Such dis-

agreement is only evidence tending to show that the agreement never existed, or had not been performed. And we think the evidence shows that the agreement was made and that the rights under it still exist, unless Thomas Robbins bought without notice. The evidence shows that when he purchased the land this water was running as divided in the ditches, and Coffman was in possession, taking his half to his south-east corner, and Robbins must be presumed to have purchased knowing this fact. We think, therefore, that these parties have each a right to one half of this water, as decreed by the circuit court.

We think, also, that the evidence shows that both parties have been at fault in seeking to evade the agreement by which the water was divided; for it appears that the respondent claimed that he had a right to take all the water to his south-east corner and deprive Robbins of all the water, and that both parties have been injured by turning the water from the ditches and letting it flow at will. It seems to have been an unfortunate quarrel between neighbors, by which both have suffered. And we think that while the court is called on to settle the rights of the parties to the water, as neither party is without fault and both have been injured, neither should recover damages, and the decree will be modified in this respect; and appellant will be entitled to costs in this court, and respondent in the circuit court.