[Filed April 21, 1890.]

## J. P. COMBS, APPELLANT, *v.* S. R. SLAYTON, RESPONDENT.

WATER RIGHTS—ARGUMENT AS TO USE.—An agreement between parties who have set-
tled upon lands in the vicinity of a stream of water capable of being utilized for
the purposes of irrigation as to the appropriation of the water for such purpose and
as to the relative quantity which each shall be entitled to use; and such agree-
ment has been acted upon for a long time by the parties and a violation of it by
any of them would produce irreparable damage to others, will be enforced in a
court of equity.

CONTIGUOUS OWNERS—MUTUAL USE OF WATER—TACIT AGREEMENT.—Where certain par-
ties settled upon lands as above mentioned and their lands would have been of
little if any value without irrigation, and they coöperated in constructing dams and
digging ditches for the purpose of conveying the water on to their respective par-
cels of land in order to irrigate them; *held,* in the absence of direct proof to the
contrary, that it was evidence of a tacit agreement between them that each should
be entitled to enjoy an equal share of the water which the stream afforded, which
a court of equity in a proper case would enforce.

APPEAL from Crook county: J. H. BIRD, judge.

The appellant commenced a suit against the respondent
to enjoin him from diverting water from a certain stream
flowing through said county known as Ochoco creek.
He alleged in his complaint that he was owner in fee of
certain lands and premises situate in said county, and
formerly consisting of two distinct parcels; that said creek
took its rise about twenty-five miles from the premises in
an easterly direction, and that when it reached a point

about one-fourth of a mile east of the eastern boundary thereof it divided and formed two chanels, each of which ran across different parts of the premises; that the appellant used the premises for farming purposes, and that it was necessary in the use thereof to use the waters of the said creek to irrigate the land; that the respondent had disturbed him in the enjoyment of such use by tapping the main channel of the stream about one-fourth of a mile east of his premises with a ditch and appropriating the waters thereof to his own use and benefit whereby he had materially diminished the quantity of the flow across his lands and deprived him of the use of the water to his irreparable damage.

The respondent filed an answer to the complaint, denying that the said creek divided, forming two chanels as alleged; denying the diversion of the water thereof, and alleged that he was the owner in fee of certain lands and premises situated in the vicinity of the appellant, which he was cultivating for grain and other purposes, and that to insure a good crop it was necessary during the growing seasons of each year to irrigate the lands so cultivated, and that the water used for such purpose had necessarily to be brought from said creek; that in 1873 he constructed the said ditch referred to in the complaint, at great labor and expense, through the lands of J. H. Snoderly; that in building the ditch and keeping it in repair he expended in time, money and labor $500; that it was built and the water of the creek appropriated and used by him for such irrigating purposes long prior to any appropriation or use thereof by appellant; that he necessarily required for such use about 1000 inches of the water from the creek; that after taking out of the creek such amount, sufficient water is left for the use of respondent's land; that at divers times during the last ten years the appellant has stood by and seen him expend money, time and labor in building and repairing the said ditch for the purpose of appropriating the water from said creek, and has made no mention or claim as to his right to the waters thereof; and at various times

during said period has especially admitted respondent's right to do so; that his appropriation of said water has been with the full knowledge and with the *expressed* as well as implied consent of the appellant. The respondent further alleged that the appellant's right to claim all the waters of said creek was barred by the statute of limita tions.

The appellant filed a reply denying the new matter of defense set forth in said answer, and the said circuit court thereupon appointed a referee to take and report the testimony in the case.

Said cause was afterwards heard by the court upon the report of the referee, and it found that the allegations of the complaint had not been sustained, but that those of the answer had, and thereupon dismissed the suit at the cost of the appellant, which is the decree appealed from.

*George H. Williams,* for Appellant.

*George W. Barnes,* for Respondent.

THAYER, C. J., delivered the opinion of the court.

It appears from the pleadings and evidence in this case that the appellant's premises consist of the northeast quarter of section 2, the north half of the northwest quarter and the west half of the northeast quarter of sec- tion 1, all in T. 15 S., R. 16 E. Willamette meridian; that he has been the owner of the northeast quarter of said section 2 since about the year 1870, and of the north half of the northwest quarter and the west half of the northeast quarter of said section 1 since the twelfth day of Septem- ber, 1876, at which last-mentioned time he purchased the same from James McDonald, who was the owner thereof from about the year 1870 to the time of the sale to ap- pellant.

The evidence further shows that about the year 1870 a ditch was cut from the north side or right bank of the said creek to a point northerly through a part of the land of said Snederly where it intersected a slough, or old channel,

which extended west through the lands of said Snoderly and the appellant in the same course as the creek, northerly therefrom; that by means of said ditch the water from the creek ran into the said slough and formed one of the channels referred to in the complaint; that the water from the said slough has been used more or less ever since it was turned into it by the appellant for the purpose of irrigating his land; that about the year 1876 the respondent located and constructed the ditch in question, which is connected at its head with the former ditch, and extends northerly over the lands of Snoderly and of said Wilson for some distance, and from thence in a westerly direction through Wilson's said land across the south half of the southeast quarter and the south half of the southwest quarter of section 35 on to the southeast quarter of said section 34, the lands of the respondent; that ever since the construction of the last-mentioned ditch the respondent has used the water of said creek for the purpose of irrigating his said lands, with the knowledge of the appellant, who acquiesced in such use except when, in consequence of the low stage of water in the creek, it interfered with his (appellant's) use thereof; that after the first ditch was constructed and the waters of the creek were turned into the said slough, they washed out so large a channel that the waters of the entire creek were liable to run through it and damage the lands over which it extended; that the settlers living in the vicinity thereupon built a dam at the point of connection of the said ditch and creek; that afterwards the respondent built another dam across the ditch about 100 yards below the first one, by means of which he turned the waters into his ditch, and about the same time the appellant built another dam across the slough about 200 yards below the one built by the respondent, by means of which he took the water out to irrigate his lands.

The said lands require irrigation in order to insure a reasonable crop, and would be of little value for agricultural purposes without it. The said creek furnishes suffi

cient water for that purpose until about the first of June of each year; the flow from that time diminishes gradually until the latter part of August, when it usually ceases altogether. If the waters of the creek could be justly apportioned among the several land owners above referred to, it would doubtless enable each of them to cultivate his land with profit, and it is evident from the testimony and proofs in the case that such was the understanding among them in the outset. None seems to have claimed any exclusive right to the water, and each has generally evinced a desire to respect the rights of the others in its use.

In view of the condition of the subject matter, and of the manner in which the several parties interested have treated it, I am convinced that there was a tacit agreement among them that each should be entitled to appropriate a just proportion of the water of the creek for the purpose of irrigating his land.

Said parties were doubtless induced to locate where they did in order to secure the benefit of the water of the creek, for the purpose mentioned, and the exercise of a liberal policy in extending the privilege was best calculated to influence the greater number of persons to make permanent settlement there, which is an important consideration in the founding of a frontier community. The parties appear to have coöperated in providing facilities for using the water to render their lands productive, and they no doubt intended to afford to each an equitable share of it. None of them could have reasonably supposed that he was acquiring an exclusive right to a definite and certain quantity of the water, or that he would be permitted to use it to the exclusion of the right of the others in its use for similar purposes. Whether the respondent has appropriated more of the water than a due share thereof does not definitely appear; but he has set up an arbitrary claim to a thousand inches of it, which he insists he has secured by adverse user of a sufficient length of time to establish a right by prescription. His claim, however, is not sup-

ported by the facts and circumstances attending the affair, and is inconsistent with the acts and conduct of the parties in the premises.    He may have been entitled to the amount of water claimed for the purpose of irrigating his lands, but whether or not he was depends entirely upon the quantity which the stream was capable of furnishing.    The rights of each of the parties regarding the use of the water are merely relative.    Nor was the appellant entitled to an injunction restraining the respondent from diverting and using water from the said creek for the purpose of irrigating his lands unless he sought to appropriate more than a just share thereof under the implied arrangement before referred to.

There are, however, some items of testimony in the depositions which would indicate that the respondent's right to the use of the water was merely permissive; but a court of equity in such a matter will give effect to the intention of the parties as ascertained from their acts regarding it, and the circumstances connected therewith, where it is not satisfactorily shown by direct evidence.

I am fully satisfied in this case that it was the intention of the parties before named, that as between themselves to enjoy equal rights in the use of the waters of the said creek, and that they acted upon such intention in building the said dams and in the construction of said ditches, and that the same should be carried into effect.

This court held in *Coffman* v. *Robbins,* 8 Or. 278, that a parol agreement to divide water which passed through the lands of different persons, each of whom prepared ditches for conducting the water and took and enjoyed it for a number of years under the agreement, would be upheld and enforced in equity, although the only consideration for the agreement was the digging of the ditches and taking care of the water.    The principle determined in that case is, I think, applicable to this one; and if the said parties were all before the court, I should be in favor of rendering such a decree as would enforce it, but we cannot bind persons who have not been made parties to the suit.

There is, however, some direct proof in the case, and rather strong inferences, that the respondent has been accustomed at times to use more of the said water than he was entitled to, upon the basis suggested, and he claims an absolute right to use certain specific amounts regardless of the amount of the supply.

I am of the opinion, therefore, that the circuit court, instead of rendering the decree appealed from should have decreed that the respondent be restrained and enjoined from using any more of the water than an equal share with the other parties named, whenever there was not a sufficient quantity of it in the said stream to fully supply them all. Such a decree can be enforced in the mode pointed out in *Olmstead* v. *Loomis,* 9 N. Y. 423, and approved by this court in *City of Salem Co.* v. *Salem F. & M. Co.,* 12 Or. 387, or by any other suitable and practicable mode which may be adopted.

The contention in *Olmstead* v. *Loomis* was in regard to the use of water for hydraulic purposes, but I think the principle is equally applicable to a case like the present one. Under this view, the decree appealed from must be reversed, and a decree entered in accordance with the principle above laid down, and the case remanded to the said circuit court with directions to enter such decree as the decree of that court, and enforce it by such mode of procedure as to the said court may seem most suitable and proper. Neither party will be entitled to costs and disbursements in the suit or upon the appeal, but each is required to pay the costs and disbursements which he has incurred. The costs and disbursements, however, which may be incurred in the enforcement of the decree shall be taxed against the respondent in case he refuses to observe its terms.