[Decided June 28, 1894.]

## McBROOM *v.* THOMPSON.

1.  Waters — Parol License — Revocation.— A parol license to divert a certain quantity of water for irrigating purposes is not revocable by the licensor after the licensee has expended his money and labor. in digging a ditch and preparing his land for the use of the water upon the faith of such parol license; and a grantee of the riparian owner having notice of such license takes subject to it.  *Curtis* v. *La Grande Water Co.* 20 Or. 34, approved and followed.

2.  Estoppel — Irrigation — Permitting Improvements to be Made Without Objection.—Where, for a series of years, riparian owners and their

grantors have acquiesced in the diversion of a part of a stream by a person who is not a riparian owner, and such person has yearly aided in keeping the channel of the stream open, and expended money on his farm, which would be worthless without the water, a court of equity will not enjoin a further diversion of the water at the suit of such riparian owners.*

APPEAL from Umatilla: MORTON D. CLIFFORD, Judge.

This is a suit by P. G. McBroom to enjoin the defendants from diverting the waters of a branch of the Walla Walla River, in Umatilla County, Oregon. The evidence shows that on December thirteenth, eighteen hundred and eighty-two, Henry Nichols obtained a patent from the United States for the southwest quarter of section twenty-six, in township six north of range thirty-five east of the Willamette Meridian, and on June eighteenth, eighteen hundred and eighty-three, he and his wife conveyed a tract of fifteen and one half acres from the northwest corner thereof to R. B. Crego, who, on October tenth, eighteen hundred and eighty-seven, conveyed it to the plaintiff; that the Walla Walla River flows in a northerly direction to a point near the town of Milton, where it divides into two branches, the eastern being known as the Tum-a-Lum, and the western as the Little Walla Walla, which flows through plaintiff's land, situated about two miles below the fork. The defendant Thompson, being the owner of land above plaintiff's through which the Little Walla Walla flows, on February twenty-eighth, eighteen hundred and eighty-four, granted to his codefendants the right to divert the water of said stream and conduct it in a ditch across his premises, to be used in irrigating theirs. The defendants, having obtained Crego's consent thereto, dug a ditch about two and a half

* NOTE.— An interesting collection of authorities touching the subject of estoppel by conduct will be found in a note to the Arizona case of *Dalton* v. *Rentaria*, 15 Pac. 37.— REPORTER.

miles in length, from a point on the Little Walla Walla River just below the said fork, and have since eighteen hundred and eighty-four diverted and appropriated water to irrigate their lands, no part of which is returned to said stream. The Tum-a-Lum has a greater fall and swifter current than the Little Walla Walla, and the winter freshets fill up the head of the latter stream with rock, gravel, and other material, seriously obstructing the flow of the Walla Walla into it, and causing the greater quantity of water to flow into the Tum-a-Lum; and the persons owning lands on the banks of the Little Walla Walla River, together with the defendants, whose lands are irrigated by water from said ditch, have, by common consent and understanding, each year removed by their own labor the obstructions from the channel of the Little Walla Walla River, and built dams in the Tum-a-Lum, by which about one half of the volume of water has been made to flow in each stream, for which service the defendants were to have the privilege of withdrawing water to irrigate their lands. The plaintiff, prior to his purchase of the land from Crego, saw the said ditch, and knew that the defendants were diverting water from the stream running through the tract he intended to purchase; he aided the defendants and others in removing such obstructions, and placing the dams aforesaid, with knowledge of said understanding, and of the fact that the defendants were laboring and expending their means in improving and cultivating their lands which would be valueless without irrigation, and never made any objection to the use of said water by them till this suit was commenced. The plaintiff alleges in his complaint that he is a riparian proprietor on the Little Walla Walla River, and entitled to the flow of said stream in its natural channel; that the defendants are not riparian proprietors on said stream, and have no

right to divert the waters thereof, which he needs for
irrigation and domestic purposes. The defendants, after
denying the material allegations of the complaint, allege
the foregoing facts as an equitable estoppel. After the
issues were completed the cause was referred to R. M.
Turner to take testimony, which having been done, the
court at the hearing thereof decreed a perpetual injunc-
tion against the diversion and use of the water of said
stream, and awarded plaintiff his costs and disbursements,
from which decree the defendants appeal.

REVERSED.

*Messrs. Cox, Catton, Teal & Minor*, for Appellants.

The right to the use of water may be acquired by ex-
clusive and uninterrupted enjoyment in a particular way
for a period corresponding with the time fixed by the
statute as a bar to an entry on lands: Black's Pomeroy
on Water Rights, § 133; *Tolman* v. *Casey*, 15 Or. 83; *Hus-
ton* v. *Bybee*, 17 Or. 140; *Crandall* v. *Woods*, 8 Cal. 136;
*Union Water Co.* v. *Crary*, 25 Cal. 504, 85 Am. Dec. 145.

The use enjoyed here had all the essentials to create a
prescriptive right. There was nothing to detract from it
except some verbal objections, which were insufficient to
suspend the running of the statute: *Lehigh Valley R. R.
Co.* v. *McFarlan*, 43 N. J. Law, 605; *Cox* v. *Clough*, 70 Cal.
345; *Kimball* v. *Ladd*, 42 Vt. 747.

A change in the point of diversion works no break in
the running of the statute: *Kidd* v. *Laird*, 15 Cal. 161,
76 Am. Dec. 472; *Junkans* v. *Bergin*, 67 Cal. 267; *Fuller*
v. *Swan River P. M. Co.* 12 Col. 12.

An agreement between parties who settle upon lands
in the vicinity of a stream of water capable of being
utilized for irrigation, as to the appropriation of the water
for such purpose, which agreement had been acted upon
for a long time by the parties, and its violation by any

of them would produce irreparable damage to others, will be enforced in a court of equity: *Coffman* v. *Robbins*, 8 Or. 278; *Combs* v. *Slayton*, 19 Or. 99; *Dalton* v. *Rentaria*, ( Ariz.), 15 Pac. Rep. 37; *Churchill* v. *Bauman*, 95 Cal. 541.

The respondent is estopped by the facts of this case from denying the appellants' right to the diversion of the water taken by them: Gould on Waters (1st Ed.), § 530; *Combs* v. *Slayton*, 19 Or. 99; *Curtis* v. *La Grande Water Co.* 20 Or. 34, 10 L. R. A. 484; *Churchill* v. *Bauman*, 95 Cal. 541; *Slocum* v. *C. B. & Q. R. R. Co.* 57 Iowa, 675; *Niven* v. *Belknap*, 2 Johns. 573; *Parke* v. *Kilham*, 8 Cal. 77, 68 Am. Dec. 310; *Hodgson* v. *Jeffries*, 52 Ind. 334; *Ogle* v. *Dill*, 55 Ind. 130.

The respondent is bound by everything that would have bound his grantors: *Coffman* v. *Robbins*, 8 Or. 278; *Curtis* v. *La Grande Water Co.* 20 Or. 34, 15 L. R. A. 484; *Carlisle* v. *Stephenson*, 3 Md. Ch. 499.

*Messrs. Leasure & Stillman,* for Respondent.

The fact is established by the evidence of all parties that a large amount of water is diverted from the Walla Walla River by the Powell Ditch, which is never returned to the stream, and that this ditch, leaving the river about two miles above the premises of McBroom, was dug and is owned and controlled by all the defendants. No pretense is made by the defendants that they are not absolutely appropriating and diverting the water carried in the ditch to their own use. They do not merely claim the use of the water, sending it down to the riparian owners below, after enjoying the usufruct, but the water diverted, after it has passed their premises, and after they have used it, is premitted to go where it wills, no pains whatever being taken to return it to the natural and ancient channels of the Walla Walla River so that riparian owners below might enjoy even the use of the

surplus. This is directly in violation of the right of McBroom, a riparian owner — whose lands lie on both sides of the Walla Walla River — below to the unrestricted and undiminished flow of the water onto and across his premises in the natural and ancient channels. Although McBroom has merely the usufruct of that water as it passes along, the right to the usufruct of the undiminished flow of the river is an undoubted right that attaches to the land: *Weiss* v. *Oregon Iron Co.* 13 Or. 497; Angel on Water Courses, §§ 90, 94; Gould on Waters, § 204; Washburn on Easements, § 319; *Oregon Iron Co.* v. *Trulinger*, 3 Or. 1. The right to even the usufruct is limited to riparian owners or proprietors, while in this case it is worthy of note that none of the defendants, except Thompson, are riparian proprietors on the Walla Walla River at all, or upon any of its ancient channels.

After title to the premises had passed from the United States to plaintiff's grantors, no one could thereafter appropriate the water flowing across his land at the time he obtained title: *Leigh* v. *Independent Ditch Co.* 8 Cal. 323; *Crandall* v. *Woods*, 8 Cal. 136. It is fully in evidence in this case that McBroom was, and is, the owner of the tract of land mentioned and claimed by him in his complaint; that he, and his grantors, have reduced part of it to cultivation, and that two or more natural channels of the Walla Walla River flow through it from which he drew water for irrigation and domestic purposes. It is also in evidence that there is no very large amount of water flowing through these streams at the best, and by the testimony of the defendants themselves, especially of the defendant Powell, that the Powell Ditch was about three feet wide at the top, and an average depth of eight inches, and that it carried about that quantity of water away from the Walla Walla River.

It is fully established by the testimony of all the wit-
nesses for the plaintiff, that by reason of the waters di-
verted from the Walla Walla River by means of the
Powell Ditch, McBroom, during the irrigation seasons of
eighteen hundred and ninety-two and eighteen hundred
and ninety-one and eighteen hundred and ninety, had
not sufficient water to irrigate his fruit, berries, or vegeta-
bles, and at one time not even enough to water his
horses.   In that respect, direct and positive injury is
shown to have been sustained by McBroom.   The testi-
mony of all the witnesses shows that it is the intention of
defendants to continue the operation of the Powell Ditch.
Certainly neither as riparian owners nor prior appropria-
tors have they any right which would warrant them in
working such a hardship upon McBroom, and depriving
him of his riparian rights.

If there had been an agreement between plaintiff, or
his grantors, and the defendants, and then plaintiff and
defendants had coöperated in digging ditches for the pur-
pose of carrying water upon their respective parcels of
land, the court might be justified in dividing the water.
But where there is no such agreement or coöperation, the
courts will not deprive a riparian owner of his property:
*Combs* v. *Slayton*, 19 Or. 99; *Lux* v. *Haggin*, 69 Cal. 255;
*Rissein* v. *Brown*, 10 S. W. Rep. 661.

Opinion by Mr. Justice Moore.

The defendants contend that the ditch was construct-
ed under a parol license from R. B. Crego, plaintiff's
grantor, and that after its construction the license became
irrevocable.   The defendant, W. S. Powell, testified that
after securing the deed from the defendant Thompson,
the construction of the ditch was commenced with Crego's
consent, but that Henry Nichols then owned the tract of
land now owned by the plaintiff.   In this the witness is

in error, as the record evidence conclusively shows that
Crego had obtained his deed from Nichols more than
eight months prior to the date of Thompson's deed; and
while Nichols may have objected to the diversion of the
water, he then had no right to speak as a riparian pro-
prietor of the premises now owned by the plaintiff. The
ditch having been constructed under a parol license from
Crego, the question is presented whether such license is
revocable after labor and money have been expended in
pursuance thereof. "An executed license," says Lord, J.,
in *Curtis* v. *La Grande Water Co.* 20 Or. 34, 23 Pac. 808,
25 Pac. 378, 10 L. R. A. 484, "is treated like a parol
agreement in equity; it will not allow the statute to be
used as a cover for fraud; it will not permit advantage
to be taken of the form of the consent, although not
within the statute of frauds, after large expenditures of
money or labor have been invested in permanent im-
provements upon the land, in good faith, upon the re-
liance reposed in such consent. To allow one to revoke
his consent when it was given or had the effect to in-
fluence the conduct of another, and cause him to make
large investments, would operate as a fraud, and warrant
the interfence of equity to prevent it, under the doctrine
of equitable estoppel." In *Coffman* v. *Robbins*, 8 Or. 278,
it was held that a parol agreement to divide the waters
of a stream that had been acted upon by the parties for
several years, under which ditches had been dug and
possession given, would be enforced in equity. So, too,
in *Combs* v. *Slayton*, 19 Or. 99, 26 Pac. 66, it was held
that where the riparian proprietor had not claimed the
exclusive right to the water of a stream, but had per-
mitted the defendant to dig a ditch and appropriate a
part thereof, that such acts evince a tacit agreement that
each should be entitled to appropriate a just proportion
of the water for the purpose of irrigation, and that such

agreement should be carried into effect. While it is claimed that the better rule, in view of the statute of frauds, appears to be that, so far as the question of further enjoyment is concerned, the licensor may revoke the parol license after an outlay under it (Bigelow on Estoppel, 666), the contrary doctrine has, by the foregoing decisions, been firmly established in this state. The reason for the estoppel in such cases rests upon the principle that the licensee, after the expenditure of money and labor on the faith of the parol license, cannot be placed in *statu quo* upon its revocation: 2 Herman on Estoppel, § 982. The defendants having expended their money and labor in digging the ditch upon the faith of Crego's parol license, it follows that he could not revoke it after such expenditure, and the plaintiff, having acquired the title to his premises with notice of the diversion, could obtain no greater interest therein than his grant or possessed, and hence he cannot now revoke the license: *Curtis* v. *La Grande Water Co.* 20 Or. 34, 10 L. R. A. 484.

The evidence shows that the defendants have each year since the ditch was constructed, aided the riparian proprietors, including Crego and plaintiff, in removing obstructions from the Little Walla Walla River, and in building dams in the Tum-a-Lum, under a common understanding that in consideration of such aid the defendants were to have the right to divert sufficient water for the irrigation of their lands; that the plaintiff and his grantor have for eight years, with knowledge of the diversion and use of the water, seen and acquiesced in the defendant's improvement of their farms by means thereof, under a reasonable expectation that the diversion and use would be continued, and from these circumstances it is contended that the plaintiff is estopped from discontinuing the diversion and use of the water for irrigation. Such acqui-

escence, if voluntary and continued for a considerable length of time, constitutes a *quasi* equitable estoppel that does not cut off the party's title nor legal remedy, but bars his right to equitable relief, and leaves him to his legal action alone: 2 Pomeroy's Equity, § 817. The case of *Dalton* v. *Rentaria* (Ariz.), 15 Pac. 37, illustrates this doctrine. That was a suit to restrain the defendants from preventing the waters of the Santa Cruz River, in Arizona, from flowing in certain acequias from which plaintiffs' land was supplied with water for irrigation. The plaintiffs had contributed their proportion of labor and expense in maintaining all said acequias for irrigating purposes equally with the defendants. The defendants, in their answer, admitted that the greater part of plaintiffs' lands, which were arid, and would raise no crops without irrigation, had been cultivated for sixteen years. The court in passing upon the question said: "These admissions on the record are significant, and evoke a serious reflection. If the greater part of the plaintiffs' land has been cultivated for the last sixteen years, it was done with or without defendants' consent. If without their consent, have they not been guilty of laches, unreasonable delay, and inexcusable neglect in waiting sixteen years without taking any steps to restrain the wrongful acts of plaintiffs? If the defendants were fairly put upon their guard; if they had actual knowledge that plaintiffs were diverting waters that belonged to defendants by virtue of prior appropriation; if they stood by for sixteen years or more, and saw the plaintiffs build their houses, open out their lands, and put them in cultivation, expend their money in the improvement of these homes, pay their proportion of the expenses, and bear their proportion of the labor in building and repairing the acequias, and otherwise do and perform such acts as indicated that plaintiffs believed they had equal rights with defendants to the waters of

Santa Cruz River,— do not all these circumstances serve to imply that defendants waived or abandoned any exclusive prior right to said waters?    At least was there not such unreasonable delay as that they are now precluded from complaining?    Will parties be permitted to stand by for sixteen years or more and see new fields put in cultivation, irrigated, forsooth, with water to which they have an exclusive prior right, see large sums expended in erecting new homes, and witness new and important interests intervene, and then be heard to complain?    *A fortiori*, defendants will not be heard to complain if these things were done with their consent.    Indeed, our opinion is, in this case, that acquiescence, nonaction, on the part of the defendants for so long a time gave consent.    They could not consent 'till title vested, and then dissent,' so that it is really immaterial whether the irrigation was done with or without defendants' consent, if they stood passively by.    See *Smith* v. *Hamilton*, 20 Mich. 433; *Park* v. *Kilham*, 8 Cal. 78; *Joyce* v. *Williams*, 26 Mich. 332."

In *Slocumb* v. *Railway Co.* 57 Iowa, 675, 11 N. W. 641, the facts showed that a small creek touching a corner of plaintiff's land was crossed by defendant's railroad upon bridges at two places.    The defendant filled the bed of the creek at the two crossings, and turned the channel along the side of the railway, so that the bridges were dispensed with, and the creek did not touch plaintiff's premises.    The plaintiff stood by and saw the work of diversion progressing, and it was not until after it was fully completed, at a cost of more than five thousand dollars, that any objection was made.    It was there held, upon those facts, that the trial court did not err in refusing to grant a mandatory injunction for the restoration of the stream.    In the case at bar there has been more than a mere voluntary acquiescence, or standing passively by, while the defendants were digging their ditch

and improving their lands. The plaintiff and his grantor, for eight years, without any objection whatever, aided the defendants in repairing the damages caused by the winter freshets, with knowledge of their appropriation, and of the common understanding that in consideration of such aid the defendants were to enjoy the right of diverting the water for the irrigation of their lands. The defendants, thus encouraged by the plaintiff's voluntary aquiescence and participation in a common purpose, laid out their money and expended their labor in making homes for their families, under an obvious expectation that no obstacle would afterward be interposed to prevent their enjoyment. The plaintiff's objection, in view of the unreasonable delay, and of all the circumstances of the case, now comes too late, and under the maxim that, "He who is silent when he ought to speak, shall not be heard to speak when he ought to keep silent," he can have no standing in a court of equity to enjoin a diversion and use of the waters of a stream that he and his grantor have tacitly encouraged. It appears from the evidence that the defendants have been diverting about two hundred and forty inches of water from the Little Walla Walla River, without pressure, and that this quantity is necessary for their use, and that fully as much flows in the channel of said stream through plaintiff's land, which, if diverted, would be sufficient for its irrigation. Plaintiff's cause of suit is not based upon a division of the water in proportion to the equitable rights of the parties, but to enjoin the defendants from preventing the water of the stream from flowing through his land in the natural channel, undiminished in quantity; and since it appears that there are other riparian proprietors on said stream who are interested in the diversion, but are not parties to this suit, no decree could settle their respective rights by a division of the water, and hence it would be

useless to remand the cause for that purpose. The decree will therefore be reversed and the complaint dismissed.

REVERSED.