Decided at PENDLETON, July 20, 1895.

## GARRETT v. BISHOP.

[41 Pac. 10.]

1. REVOCATION OF PAROL LICENSE.— A parol license cannot be revoked after it has been executed by the licensee who in reliance thereon has expended money in permanent valuable improvements:* Curtis v. La Grande Water Company, 20 Or. 34, and McBroom v. Thompson, 25 Or. 559, approved and followed.

2. EQUITY JURISDICTION TO ENJOIN TRESPASS— ADEQUATE REMEDY AT LAW.— Where the nature of a trespass is such that the injury cannot be adequately compensated in damages, and there is no sufficient remedy at law, an injunction will be issued to grant relief; but where it seems probable that the trespass is not likely to be repeated, and the defendants are able to respond in damages, it does not seem necessary to resort to equity: Smith v. Gardiner, 12 Or. 221, and Mendenhall v. Harrisburg Water Company, 27 Or. 38, approved and followed.

APPEAL from Baker: MORTON D. CLIFFORD, Judge.

This is a suit by Louisa Garrett to enjoin P. R. Bishop and C. H. Stuller from continuing an alleged trespass on plaintiff's premises. The facts are that plaintiff is the owner of one hundred and sixty acres of land, situated in Baker County, Oregon, through which the waters of Styce's Gulch flow in a northerly direction, emptying

---

* The revocability of parol licenses after the licensee has expended money on the strength of the grant is considered in Pitzman v. Boyce, 33 Am. St. Rep. 536, Metcalf v. Hart, 31 Am. St. Rep. 122, and Lawrence v. Springer, 31 Am. St. Rep. 702. There are notes with all these cases, but the subject is particularly well considered in the voluminous note to the last one.— REPORTER.

into Powder River, which also flows through said land in an easterly direction; that by means of ditches connected with Styce's Gulch in eighteen hundred and sixty-nine and eighteen hundred and seventy-five, about seventy-five acres of said land had been irrigated and put in cultivation, and in eighteen hundred and ninety the plaintiff, desiring more water for irrigation, commenced a ditch from Powder River, and in April of the following year entered into an agreement with the defendants, by the the terms of which they undertook to enlarge said ditch and construct it across the plaintiff's land and supply it with water sufficient for the irrigation of said land, in consideration of the use of the surplus, after her appropriation had been made, to operate a placer mine owned by them. The defendants, in pursuance of the terms of said agreement, commenced the ditch at a point on the river about a quarter of a mile above plaintiff's point of diversion, and at an expense of one thousand two hundred dollars constructed it, on a line marked out and agreed upon by the parties, across the plaintiff's land to their mining claim; that the ditch was dug in light soil on the side of a hill for a part of the way, and by reason of cattle being driven across it, and squirrels burrowing in its banks, the water escaped from such places, flowed on the plaintiff's meadow, and injured about twenty acres of grass. The plaintiff brings this suit to prevent a recurrence of the injury, and alleges that the defendants unlawfully broke and entered her close, cut down and destroyed the banks of her irrigating ditch, rendering it unsafe and useless, and, having turned a large quantity of water therein, the banks of the ditch gave way at different times and places, and her meadow was covered with gravel, rocks, and débris, and twenty-five acres of hay land kept flooded with water; and that, by reason of the ditch being dug too deep in

places, twelve acres of her grain land could not be irri-
gated; that in April, eighteen hundred and ninety-two,
the defendants unlawfully drained all the waters of
Styce's Gulch away from her ditches, and diverted the
flow thereof, and threatened to deprive her of the use of
the waters of said streams; and prays that they may be
perpetually enjoined from diverting the same.  The de-
fendants, after denying the materiel allegations of the
complaint, allege that the ditch was constructed under a
license from the plaintiff, upon the faith of which they
had relied, and had expended about six thousand dollars
in improving their mining property, valued at twenty
thousand dollars, and that if they were deprived of the
use of the water from Powder River by the ditch so con-
structed by them, their mine would be rendered value-
less; and claimed that the plaintiff by reason of her con-
duct was estopped to enjoin them from appropriating the
water to the operation of their said mine.   A reply hav-
ing put in issue the allegations of new matter contained
in the answer, the cause was referred to D. D. Williams,
Esq., who took the evidence, and from it found that the
equities were with the defendants, and that the suit
should be dismissed.   The court, however, set aside
these findings, and rendered a decree perpetually en-
joining the defendants from conducting water across
plaintiff's premises, from which decree the defendants
appeal.                                    REVERSED.

For appellant there was a brief by *Messrs. M. L. Olm-
stead* and *H. E. Courtney,* and an oral argument by *Mr. Olm-
stead.*

For respondent there was a brief by *Messrs. T. Calvin
Hyde,* and *Rand, Williams and Shinn,* and an oral argument
by *Mr. J. L. Rand.*

Opinion by MR. JUSTICE MOORE.

1. It is contended that a parol license cannot be revoked after it has been executed by the licensee, who, relying upon the faith of the privilege conferred, has expended money in making valuable permanent improvements. The principle contended for assumes that the outlay of money in making such improvements is equivalent to the payment of a valuable consideration for the license, which, having been executed, becomes irrevocable, and is converted into an agreement which equity will enforce, upon the theory that the licensor, having encouraged the improvements which have been made upon the faith of the license, is estopped by his conduct from asserting his strict legal rights. The leading case in support of this principle is *Rerick* v. *Kern,* 14 Serg. and R. 267, (16 Am. Dec. 497,) in which it appears that Kern, being about to erect a sawmill on a branch known as the right-hand stream, found a better location on the left-hand stream, and, having obtained Rerick's permission, built his mill on the latter stream, which, without the aid of water from the right-hand stream, would have been wholly insufficient to operate the mill. No deed was executed or any consideration paid for the privilege; but, after Kern, in consequence of the permission, had put his mill in successful operation, Rerick revoked the license by removing the dam which was built to divert the water. It was there held that the license, in consequence of the improvement, became irrevocable, GIBSON, J., in delivering the opinion of the court, saying: "But a license may become an agreement on valuable consideration, as where the enjoyment of it must necessarily be preceded by the expenditure of money; and when the grantee has made improvements or invested capital in consequence of it, he has become a purchaser for a valuable consideration. Such a grant is a direct encourage-ment to expend money, and it would be against all con-

science to annul it as soon as the benefit expected from the expenditure is beginning to be perceived." The editors of the American Decisions, in their notes to this case, (16 Am. Dec. 497,) after an exhaustive citation of decisions upon the question, say: "From the foregoing review of case law, it will be seen that the doctrine of the principal case, though not recognized in some of our state courts, is, nevertheless, expressive of the law as administered in the majority of them; and that the preponderance of recent judicial opinion is in harmony with the views of Judge GIBSON." The rule announced in the Pennsylvania case was adopted by this court in the case of *Curtis* v. *La Grande Water Company,* 20 Or. 34, (10 L. R. A. 404, 23 Pac. 808, 25 Pac. 378,) in which LORD, J., in commenting on the principle contended for, said: "An executed license is treated like a parol agreement in equity; it will not allow the statute to be used as a cover for fraud; it will not permit advantage to be taken of the form of the consent, although not within the statute of frauds, after large expenditures of money or labor have been invested in permanent improvements upon the land, in good faith, upon the reliance reposed in such consent. To allow one to revoke his consent when it was given or had the effect to influence the conduct of another, and cause him to make large investments, would operate as a fraud, and warrant the interference of equity to prevent it." The execution of a parol license, while relying on the faith of it, supplies the place of a writing, and takes the case out of the statute of frauds, (*Lee* v. *McLeod,* 12 Nev. 280); but, while the agreement under which the licensee has acted may be proved by parol, (*Le Fevre* v. *Le Fevre,* 4 Serg. and R. 241, 8 Am. Dec. 696,) the evidence of it should be clear and convincing, and show a permission to do the particular act which has been accomplished, or some participation in its execution by the

owner of the estate or easement affected thereby: *Mc-Broom* v. *Thompson,* 25 Or. 559 (42 Am. St. Rep. 806, 37 Pac. 57). The evidence shows an agreement between the parties in relation to the construction of the ditch; that the plaintiff's husband, as her agent, assisted in locating its course across her land; that she furnished a team and plow with which to do a part of the work; and that the completion of the ditch for the purpose of irrigating her lands, and the defendants' reliance upon the faith of the agreement, while making permanent improvements on their mining claim, constitute the consideration for the license, which, having been executed, cannot now be revoked.

2. The next question to be considered is whether equity will enjoin the use of the defendants' ditch, when its banks are liable to break, thereby causing the water to overflow the plaintiff's meadow. The defendants allege in their answer that their agreement to keep the ditch in repair formed a part of the consideration for the permission to construct it, and hence they are bound to exercise due care in the management of the ditch, and for any neglect in that respect they will be liable for any injury in excess of the ordinary consequences that might result therefrom. The rule is well settled that where one, in the execution of judicial process, abuses the license conferred upon an officer by law, he becomes a trespasser *ab initio;* but where one, under express authority of the licensor, exceeds or abuses the privilege conferred, he is only liable for the excess: *Jewell* v. *Mahood,* 44 N. H. 474 (84 Am. Dec. 90). The defendants having entered the plaintiff's premises by her express agreement, cannot be trespassers, but would be liable in an action at law for any neglect of duty or abuse of their privilege. When the nature of the trespass is such as to lead to a multiplicity of actions, or the injury goes to

the destruction of the estate in the manner in which it is enjoyed, or the trespass cannot be adequately compensated in damages, and the remedy at law is plainly inadequate, equity will grant relief by injunction: *Smith* v. *Gardiner,* 12 Or. 221 (53 Am. Rep. 342, 6 Pac. 771); *Mendenhall* v. *Harrisburg Water Company,* 27 Or. 38 (39 Pac. 399). The plaintiff knew the character of the soil along the side of the hill where the ditch was dug, and must have known its banks were, for a time at least, liable to break. The evidence shows that such soil soon becomes compact by means of water flowing in ditches, and that recurrences of the injury complained of are not to be apprehended. The injury does not, in our judgment, tend to the destruction of the estate, and only amounts to a mere trespass when the banks of the ditch break; and the damage sustained in consequence of the occasional overflow cannot be irreparable, and must be susceptible of pecuniary compensation in an action at law. If it appeared that plaintiff's land was liable to constant overflow from this source, necessitating a multiplicity of actions to compensate the injury, or that the water for any length of time stood upon the meadow, thus tending to a destruction of the estate in the manner in which it was used, equity would by injunction restrain the further use of the ditch; but, there being no evidence of the defendants' inability to respond in damages, for which the law side of the court furnishes an adequate remedy, it follows that the decree must be reversed, the injunction dissolved, and the suit dismissed, and it is so ordered.

REVERSED.