Decided 12 June, 1899.

## BOWMAN *v.* BOWMAN.

[57 Pac. 546.]

1. REVOCATION OF PAROL LICENSE.—A parol license cannot be revoked after the licensee has expended money or performed labor in making valuable and permanent improvements on the land on the faith thereof: *Huston* v. *Bybee,* 17 Or. 140; *Combs* v. *Slayton,* 19 Or. 99; *Garrett* v. *Bishop,* 27 Or. 349, cited.

2. ADVERSE POSSESSION OF WATER RIGHT.—No adverse user can be initiated until the persons possessing the superior title are deprived of its benefit in such a substantial manner as to notify them that their rights are being invaded:* *Wimer* v. *Simmons,* 27 Or. 1, cited.

3. PARTIES TO SUIT TO DETERMINE WATER RIGHTS.—In a suit to determine an adverse claim to the use of water from irrigating ditches, to enjoin defendants from interfering therewith, and to recover damages for an alleged trespass, a defendant, who, at the request of another defendant, tapped the ditches in question, and owns a tract of land across a corner of which one of them is constructed, is a proper party.

4. MEASURE OF RIGHT OF APPROPRIATION.— A paramount right to use the waters of an irrigating ditch in irrigating a tract of land is measured by the owner's necessities, and not by the capacity of the ditch.

From Union :   ROBERT EAKIN, Judge.

Suit by Isaac T. Bowman against J. W. and A. C. Bowman.   From a decree in favor of plaintiff, defendants appeal.                                    AFFIRMED.

For appellants there was a brief over the name of *Baker & Baker,* with an oral argument by *Mr. J. F. Baker.*

For respondent there was a brief and an oral argument by *Mr. Thos. H. Crawford.*

MR. JUSTICE MOORE delivered the opinion of the court.

This is a suit to determine an adverse claim to the use of water, to enjoin defendants from interfering with an irrigating ditch, and to recover damages for an alleged trespass.   Plaintiff alleges that he is the owner of two

---

*NOTE.—To the same effect, see *North Powder Milling Co.* v. *Coughanour,* 34 Or. 9.—REPORTER.

hundred acres of land in Union County, and that the
defendants own one hundred and sixty acres adjoining
thereto on the south, through which tracts Big Creek
flows in a southerly direction; that in 1869 his grantor
diverted five hundred inches of water, miners' measure,
from the east side of said creek, and in 1872 two hun-
dred and fifty inches, miners' measure, from the west
side thereof, which by means of ditches he appropriated
to the irrigation of his land; that the defendants, un-
lawfully claiming to have some interest in or right to
the easement, tapped the ditches and appropriated the
water, in consequence of which he has sustained damage
in the sum of $250. The defendants, denying the ma-
terial allegations of the complaint, aver that their prede-
cessor in interest aided plaintiff's grantor in constructing
said ditches, under an agreement that one-half of the
water flowing therein should be appropriated to their
land, notwithstanding which plaintiff has used more
than his share thereof, whereby they have been damaged
in the sum of $100. The reply having put in issue the
allegations of new matter contained in the answer, a
trial was had, resulting in a decree awarding to plaintiff
the sum of $25, as damages; giving him from the east-
side ditch seventy-five and from the west side fifteen
inches of water, miners' measure, under six-inch pres-
sure; and perpetually enjoining defendants from inter-
fering with said ditches, or the plaintiff's use of the
water flowing therein, to the extent of such award, from
which decree defendants appeal.

1. It is contended that defendants' predecessor in
interest, having, in consideration of obtaining water to
irrigate his land, aided plaintiff's grantor in extending
the ditches in order that the latter might procure the
use of water for a beneficial purpose, thereby acquired
an easement in the ditches, and such a right to the use

of the water flowing therein as to render the license under which he performed the labor irrevocable, and that, acting upon this claim of right, the defendants and those from whom they derived their title have for a period of more than ten years used a sufficient quantity of water to irrigate the cultivated portion of their said land, by which means a prescriptive right has been acquired to continue the use thereof. If the evidence bore out this contention, a reversal of the decree would necessarily follow, for the rule is well settled in this state that a parol license cannot be revoked after the licensee has expended money or performed labor in making valuable and permanent improvements on real property upon the faith of such license :* *Coffman* v. *Robbins*, 8 Or. 278; *Huston* v. *Bybee*, 17 Or. 140 (2 L. R. A. 568, 20 Pac. 51) ; *Combs* v. *Slayton*, 19 Or. 99 (26 Pac. 661) ; *Curtis* v. *La Grande Water Co.*, 20 Or. 34 (10 L. R. A. 404, 23 Pac. 808, and 25 Pac. 378) ; *McBroom* v. *Thompson*, 25 Or. 559 (42 Am. St. Rep. 806, 37 Pac. 57); *Garrett* v. *Bishop*, 27 Or. 349 (41 Pac. 10). The doctrine thus announced is not novel, for it has been repeatedly held that a parol license to do some act on the servient estate is, when executed, irrevocable : Washburn, Easm. *560 ; *Morse* v. *Copeland*, 2 Gray, 302 ; *Johnson* v. *Skillman*, 29 Minn. 95 (43 Am. Rep. 192) ; *De Graffenried* v. *Savage*, 9 Colo. App. 131 (47 Pac. 902).

Considering the rights of the respective parties, the evidence tends to show that in 1871 William Wilson settled upon said two hundred-acre tract, then unsurveyed lands of the United States, through which Big Creek flows ; that in 1872 he dug a ditch from the east side of said stream, and appropriated water therefrom, and that, after he had perfected his title to said land,

---

*NOTE.—The license here referred to must be more than a mere passive acquiescence. *Lavery* v. *Arnold*, post ——.—REPORTER.

plaintiff, on December 17, 1890, became the owner thereof; that in 1871 P. H. Miles settled upon a tract of land adjoining Wilson's on the north, dug a ditch from the west side of Big Creek, and made an appropriation of the waters thereof; that in 1875 I. Hyatt settled upon a tract of public land adjoining Wilson's on the south, and in 1877 extended Wilson's ditch to his land, and the next year he and Wilson jointly extended the Miles ditch to their tracts, and appropriated the water in irrigating the same; that, the title to the land on which Hyatt settled having been obtained from the general government, the defendant Mrs. A. C. Bowman on April 16, 1888, became the owner thereof; that plaintiff has in cultivation about seventy-five acres on the east and about fifteen on the west side of Big Creek, and Mrs. Bowman has in cultivation twelve and three-fourths acres on the east and about seven on the west side thereof, which lands are arid, but when properly irrigated become very productive; that in 1893, Big Creek becoming low, plaintiff appropriated nearly all the water in the ditches, claiming a right thereto under Wilson's appropriation, but defendants, insisting that Hyatt had a right to use one-half thereof, and that they, as his successors, were entitled to the same quantity, tapped the ditches and appropriated a part of the water, and in 1897, the stream again becoming low, the controversy was renewed, to settle which this suit was instituted July 13 of that year.

We think the evidence conclusively shows that Wilson had the prior right to the water from the east side ditch, and, if any remained after he had used sufficient to irrigate his cultivated land, Hyatt was entitled to it, and that plaintiff, having succeeded to Wilson's rights, is entitled, unless deprived thereof by an adverse user, to appropriate a sufficient quantity from the east side ditch to irrigate his cultivated land lying on that side of the

creek; that, after the needs of Miles' successor in interest are fully satisfied from the water flowing in the west side ditch, plaintiff is entitled to a sufficient quantity, if there be that amount, to irrigate his cultivated land lying on that side of the creek; and that, if any water then remain in either ditch, the defendants are entitled to the same.

2. Upon the question of a prescriptive right, the evidence shows that Hyatt never made an adverse claim to the use of the water in either ditch. He conveyed his interest in the land and water right appurtenant thereto to P. Brannon, who died seised thereof, but it does not appear that he ever made any adverse use of the water. His widow (now Mrs. McGann) testifies that they had all the water they needed to irrigate their land, but this fact she infers from the growth of the grain and fruit trees thereon. No adverse user can be initiated until the persons possessing the superior use are deprived of its benefit in such a substantial manner as to notify them that their rights are being invaded; and, as it does not appear that there was any scarcity of water until after Mrs. Bowman acquired title to her land, she can have acquired no right thereto by prescription: *Wimer* v. *Simmons*, 27 Or. 1 (39 Pac. 6); *Anaheim Water Co.* v. *Semitropic Water Co.*, 64 Cal. 185 (30 Pac. 623); *Union Mining Co.* v. *Ferris*, 2 Sawy. 176 (Fed. Cas. No. 14,371). If it be assumed, however, that Mrs. Bowman's adverse use began with her entry upon the premises, it could not deprive plaintiff of his right, because she had not been in possession ten years when this suit was commenced, and there was no adverse holding prior thereto to which she could tack her claim, and thus complete the statutory limit.

3. It is contended that the suit should be dismissed as to the defendant J. W. Bowman, for the reason that

he was improperly joined. No motion to that effect was made in the court below. Besides, the evidence shows that he, at the request of Mrs. Bowman, tapped plaintiff's ditches, and that he owns a tract of land across a corner of which one of the ditches is constructed, and for these reasons he was properly made a party, and liable with his co-defendant for the damages awarded, which are not unreasonable.

4. It is further contended by defendants' counsel that the court erred in decreeing that the water to which plaintiff was entitled should be measured under a pressure of six inches. The only evidence tending to show the extent of plaintiff's right is the testimony of W. D. Emily, who says that one-half of an inch of water per acre in ordinary seasons, and one inch per acre in dry seasons, is required to irrigate his land; but no reference is here made to "miners' inches." This witness, having said that the east-side ditch had a carrying capacity of sixty or sixty-five inches, was asked, "How do you mean that to be measured?" to which he replied, "Just the natural flow through the ditch." He did not say, however, that the quantity of water necessary to irrigate an acre of land should be measured in this manner. At the trial it was stipulated that Dunham Wright should measure the ditch at its narrowest point, and submit the notes of his survey to a mining engineer to calculate the quantity of water flowing therein "of miners' inches under a six-inch pressure." Wright, appearing as a witness, testifies that he made this survey, and gives the measurements taken; but, if any person from the notes of this survey made the calculation agreed upon, no evidence thereof appears in the transcript. Nor can this be important, for plaintiff possessed the paramount right to the use of the water by reason of his grantor's prior appropriation, in conse-

quence of which he is entitled to a sufficient quantity to irrigate the land he has in cultivation ; and this right is to be measured by the necessity, and not by the capacity of the ditch. It may reasonably be inferred from the pleadings and the stipulation that the case was tried upon the theory that the quantity of water necessary to irrigate an acre of land was to be measured in miners' inches, and, there being no statute in this state on the subject, such measurement must depend upon the customs adopted in particular neighborhoods, which are probably not of such universal application as to be judicially noticed. But, since it has been held that in some sections a miners' inch is to be measured under a pressure of six inches (*Cole* v. *Logan*, 24 Or. 304, 33 Pac. 568 ; *Low* v. *Rizor*, 25 Or. 551, 37 Pac. 82), it is quite evident that the stipulation and the pleadings supply the lack of proof as to the particular custom, and show that the witness Emily meant, and the parties understood, that the quantity of water necessary to irrigate an acre of land was to be so measured. Believing such to have been the understanding of the parties and of the trial court, we must affirm the decree, and it is so ordered.

AFFIRMED.

Decided 11 August, 1899.