Argued February 14, modified May 1, 1923.

## FOSTER ET AL. *v.* FOSTER.

(213 Pac. 895.)

**Waters and Watercourses — Old Appropriators Allowed Reasonable Latitude for Change Permitting Rotation of Crops.**

1. Appropriators of water with old-established rights dating back to a settlement in the early '70's should be allowed a reasonable latitude for a change of cultivation of the land and rotation of crops, in order that the more remunerative products may be raised, at the same time keeping the amount of water used within the limit of the quantity heretofore applied on the land to a beneficial use.

**Waters and Watercourses—Water for Irrigation to be Used Economically.**

2. Water for irrigation must be used economically and without needless waste.

**Waters and Watercourses — Land Owners Held Entitled to Use Ditch Over Land of Another.**

3. Where the construction of an irrigation ditch over the land of another was a common enterprise for the mutual benefit of the parties concerned, the owner of the land should not in equity and good conscience be permitted to revoke the right to use the ditch where revocation would occasion great damage.

**Waters and Watercourses—Parties Required to Pay Own Costs in Suit to Determine Water Rights.**

4. Where it appears that parties to a suit to determine water rights are mutually benefited by the result arising from adjustment of conflicting claims, the court may, in the exercise of its discretionary powers, adjudge that each party pay his own costs.

From Lake: D. V. KUYKENDALL, Judge.

Department 2.

This is a suit to determine the water rights pertaining to two ranches. The plaintiffs instituted the suit to enjoin the defendant from interfering with the use of the water upon their land. The trial court determined that the use of the water by the defendant was not an encroachment upon the rights of the plaintiffs, and dismissed the suit without a decree as to the respective rights of the parties. Plaintiffs appeal.        MODIFIED.

For appellants there was a brief over the names of *Mr. Ralph King, Messrs. McCamant & Thompson* and *Mr. Herbert P. Welch,* with an oral argument by *Mr. King.*

For respondent there was a brief over the name of *Messrs. Robinett, Wylie & Campbell.*

BEAN, J.—Foster Creek is a small stream of water flowing from the Summer Lake Rim in Lake County through the property known as the Foster ranch. The irrigated portions, which are irregular in shape, extend north and south along the shore of Summer Lake for about a mile. This ranch was settled upon in 1872, by James A. Foster, father of the defendant, and of the plaintiffs, except Elizabeth B. Foster, widow of James A. Foster, Evan Hartin, a son of a deceased daughter of James A. Foster and Elizabeth B. Foster, and D. C. Schminck, the husband of Artie L. Schminck, a daughter of James A. Foster and Elizabeth B. Foster. Until a short time before this litigation none of the water of Foster Creek was used elsewhere than on the old Foster ranch. Priority of right to use the waters of Foster Creek is admitted to be in the old Foster ranch which is owned by plaintiffs and defendant as tenants in common. While one or two small tracts amounting to some three or four acres were not irrigated from Foster Creek until about 1908, the irrigation of these tracts preceded any use of the water by the defendant. During the lifetime of his father the defendant Ralph Foster purchased lands adjoining the Foster ranch on the north and west. In 1916, defendant filed with the state engineer an application to appropriate the waters of Foster Creek which he proposed to divert to his own lands. This application of course is subject to vested rights. After filing

this application the defendant began diverting the waters of Foster Creek, using for the purpose a portion of a ditch built across his land by his father with his assistance to irrigate about four acres of the father's land. Plaintiffs assert that defendant's use of this water rendered the amount in the stream flowing to the old Foster ranch inadequate at certain seasons, and to have their relative rights adjudicated this litigation was instituted. Plaintiffs claimed all of the waters of Foster Creek for the old Foster ranch. Defendant admitted a prior right to thirty-five miner's inches for the purpose of irrigation of the old Foster ranch and two miner's inches for stock water, and claimed the remainder of the water allowed to him in his permit granted by the office of the state engineer of Oregon. A large amount of testimony was introduced commencing June 22, 1917, which was not completed until 1919.

In addition to the controversy over the right to use the waters of Foster Creek there is involved the right of the old Foster ranch to the use of the ditch heading on a weir in the creek in the southeast quarter of the southwest quarter of section 14, and extending to the area of four acres of grain in the northwest quarter of the southeast quarter of section 14, township 32 south, range 16 east, W. M., as marked on plaintiff's map, a short distance from the west line of the old Foster ranch.

A determination of the case resolves itself largely around the question of the duty of water and the right of the old Foster ranch to maintain and use the ditch last above mentioned. The irrigated area of the old Foster ranch is approximately ninety-four acres. Two maps are in evidence, one offered by plaintiffs and the other by defendant, showing a difference in the irrigable area of the Foster ranch.

It appears from the testimony of Mr. S. A. Mushen, a civil engineer and formerly county surveyor of Lake County for six years, and witness for plaintiffs, regarding the map made by him, that the irrigable area of the old Foster ranch consists of forty-four acres of meadow, 28.03 acres of grain, 10.4 acres of irrigated pasture land, and .3 of an acre of small fruits that are irrigated continually during the growing season. In addition there are 2.8 acres of garden land and 7.1 acres of mixed orchard and garden, .38 of an acre of the house lot full of flowers, shrubbery and trees which require irrigation, and a barn lot consisting of .62 of an acre used for a small pasture. The crops raised on the meadow land consist of wild grasses and some timothy which the testimony shows need irrigation.

The defendant introduced in evidence a map made by Mr. R. H. Rogers, county surveyor of Lake County, and testimony from which he claims that the irrigable area of the old Foster ranch is approximately 80.4 acres, there being a slight difference in the total area which the defendant's survey makes 91.32 acres. Defendant also claims there are 10.92 acres of hillside land which is not irrigated on account of its steep slope. It is also claimed on behalf of defendant that there are three or four small tracts of wet land called "tule patches" aggregating about two acres which do not need irrigation.

From a careful reading of the evidence we are not impressed with the idea that the hillside pasture land is not susceptible of practicable irrigation. It has not been irrigated as much as the other land, and it may require more effort to apply the water. Making some allowance for the small wet "tule patch" near the lake we fix the irrigable area of the old Foster ranch at ninety-three acres. The wet por-

tions of the land referred to in the testimony practically come within the matter of drainage, which invariably goes hand in hand with scientific irrigation: 1 Kinney on Irrigation, p. 58, § 38. Observation shows the necessity of drainage. Looking from the car window in traveling through the Umatilla Irrigation Project, a large drainage ditch is in plain view, where prior to irrigation the land was devoid of water. No doubt proper drainage of the Foster land will follow in due course when time and expense will permit.

There is little question but what the old Foster ranch has a prior right to the use of a sufficient amount of the waters of Foster Creek to irrigate all of the land upon which they heretofore used water. It is contended, however, on behalf of defendant that about twelve acres of the south end of the ranch lying south of a dry canyon, or ''wash,'' had never been irrigated prior to 1910. It is shown that the ditch was originally constructed to carry water to the south part of what was then understood to be the Foster ranch, and also to about seven acres of land adjoining, which was claimed by one Belknap. It later developed that these seven acres, according to the government survey, were a part of the Foster ranch. It is probable that the south end of the strip of cultivated land was not irrigated every year during all of the time. This was partially on account of shortage of water. It is written large upon the whole record, that the Foster ditches leading to the south end and to the northeast were constructed by the senior Foster during his lifetime, with the *bona fide* intent to appropriate the waters of Foster Creek in a sufficient amount to irrigate all of the irrigable land of the old Foster ranch. In the customary way of that time the land was gradually subjected to irrigation. In the northwest

portion of the ranch is a small tract of four acres cultivated to grain, that was not irrigated until 1908. The defendant thinks it was not irrigated until about 1911. In any event it was long prior to the date of the appropriation of any of the water by the defendant, and we think that all was included in the original appropriation for the old Foster ranch made by the senior Foster during the seventies. The construction of the ditches was completed and the application of the water made in 1875 and 1876.

The plaintiffs claim an irrigation season from the first of April until about the first of November. Defendant asserts that the irrigation season for crops, except garden, begins in the early part of May, and that for gardens begins the early part of June. It appears that two-thirds or three-fourths of the water should be delivered upon the meadow land before haying, or about July 15th. Later in the season it is the custom to irrigate the orchard and for a second crop or pasture. The actual irrigation appears to be governed to quite an extent by the kind of seasons. It seems from the testimony that the major part of the irrigating is done on the old Foster ranch between April 15th, and July 15th, which we consider the main irrigation season. The longer season is from April 15th to November 1st, of each year, including the customary late irrigation of the orchard and second crop.

The only information we have in regard to the rainfall of this section is that in 1915, the precipitation was 7.09 inches, and in 1916, it was 6.35 inches.

The water measurements of Foster Creek shown in the record are somewhat meager. A measurement on the first day of May, 1916, showed a flow in the creek of 1.76 cubic-feet per second. A measurement

made by engineer Duvall on May 8, 1917, showed
2.39 cubic-feet per second, and on the 27th of May,
1917, 1.96 cubic-feet. Engineer Rogers made two
measurements. In April, 1918, he found 1.18 cubic-
feet per second in Foster Creek, and in May, 1919,
he found 1.18 cubic-feet. A number of measurements
made by Mr. Rogers practically corresponded to those
made by plaintiffs' engineer, Mr. Mushen, during the
same period. Plaintiffs' engineer's figures show that
there was a shortage of water in November and De-
cember in 1916, there being a flow of about one
second-foot. The measurements for several days
during the months of April, May and June, 1917, are
given. The average flow in Foster Creek for eigh-
teen days in April, 1917, is given as 2.975 second-
feet. The average flow for twenty-one days in May
of that year is stated as 2.80 second-feet. The aver-
age flow for eighteen days in June of the same year
is given as 1.85 second-feet. After the thirteenth
day of that month the flow in the creek was 1.68 sec-
ond-feet or less. These measurements indicate, if
the season of 1917 was an average one, that after the
old Foster ranch is properly irrigated, there will be
no water for defendant as a subsequent appropriator
after about the 10th of June.

In mentioning the plaintiffs herein it is intended to
include the defendant as a part owner of the old
Foster ranch.

It is shown that Foster Creek flows through a
rocky territory from Summer Lake Rim to the Foster
ranch and thence into Summer Lake; that the descent
is quite steep and a number of ditches on the old
Foster ranch are on the hillside. The loss of water
by means of seepage and evaporation is estimated
to be from 3 to 25 per cent for the old Foster ranch
ditches.

In this case only the plaintiffs and defendant are making claim to the use of the waters of Foster Creek, although some of the water thereon has been used, by permission, on land other than that of the parties herein. The conditions obtaining in the present case are somewhat peculiar. Summer Lake is adjacent to the irrigated land on the Foster ranch. Its water is about ten feet below the top of the bank and is highly impregnated with mineral. Any water that is allowed to be wasted unnecessarily into the lake while irrigating is lost for that purpose.

From necessity much will depend upon the administration of the decree herein. For several years the old Foster ranch has been occupied by tenants, who, in a way, take the place of members of the Foster family. It is believed that with fair co-operation and neighborly tactics by the water users on the two farms involved, and reasonable notices of the opening and shutting of the headgates of the several ditches, with the assistance of the water-master for a time during the first use of the water under the decree herein, that the most beneficial use of the water can be made, with convenience at a minimum of expense, thereby avoiding the necessity of the court appointing an officer to carry out the decree.

1. We realize the importance of economy in the use of water for irrigation. Still, we are not impressed with the contention made by defendant that thirty-seven miner's inches is a sufficient amount to serve the prior right of the parties. It does not appear that such an amount would reach to the end of the long strip of irrigated land in the southern part of the Foster ranch. A quantity should be used at one time for a head sufficient to pass the waters over the area of irrigated land with a fair velocity and thereby minimize the loss. Appropriators of water with old

established rights dating back to a settlement in the early seventies should be allowed a reasonable latitude for a change of cultivation of the land and rotation of crops, in order that the more remunerative products may be raised, at the same time keeping the amount of water to be used within the limit of the quantity heretofore applied on the land to a beneficial use.

2. We have not arrived at the stage of irrigation when farmers can practically lay iron water-pipes, or construct concrete ditches; yet the question that water for irrigation must be used economically and without needless waste is no longer debatable. Public necessity demands such use and conservation of the public waters of the state.

Experienced irrigators and competent engineers have testified as experts in regard to the duty of water. While, as usual, they vary in their judgment and estimates, it is fairly established that three acre-feet of water per acre is sufficient for the old Foster ranch during the irrigation season. The garden requires to be irrigated often, the orchard somewhat differently and the meadow irrigated thoroughly. The grain land and pasture appear to necessitate a less amount of water. By establishing two measurements, one of the flow and one of the quantity to be used during the season, and allowing a fair quantity of water for the irrigation of the ninety-three acres, and a reasonable percentage for loss by transportation, taking into consideration the length of the ditch and irrigated land and all the circumstances detailed by the testimony, we believe that a workable decree can be rendered so that the plaintiffs and defendant can fairly irrigate the old Foster ranch as necessity requires. This will permit the defendant Ralph Foster to avail himself of the surplus waters of

Foster Creek under his permit to a valuable extent, before the irrigation of the older ranch commences, during a portion of the time the latter is being irrigated, after the water is turned off from the meadow at haying season, and when not used on the old Foster ranch.

We find in the briefs various sets of figures as to quantity of water for the different lengths of irrigation seasons and different areas. These figures are of assistance.

From the record we deduce the following: The plaintiffs and defendant, the owners, as tenants in common of the land hereinafter described are entitled to a water right, of a date of relative priority of 1876, of a continuous flow not to exceed 1.88 cubic-feet per second of time, to be taken from the waters of Foster Creek for the irrigation of ninety-three acres of the land described in plaintiffs' complaint, to wit, in the southwest quarter of the southeast quarter and lots 3 and 4, and the west half of the southwest quarter of section 14, northwest quarter of the northeast quarter and west half of northwest quarter of section 23, all in township 32 south, range 16 east, W. M., and containing about 360 acres, for domestic and stock uses. Such use of the water shall be limited to the amount which shall be applied to a beneficial use in the irrigation of the land, and for domestic and stock uses, and not to exceed three acre-feet of water per acre for the irrigation of said ninety-three acres during the long irrigation season of any one year, to wit, between April 15th and November 1st, of each year. This will allow a continuous flow of that amount for approximately seventy-five days during an irrigation season: See Wiel on Water Rights (3 ed.), p. 522. The land requires the application of about two thirds of such

amount prior to the time of hay harvesting, and the parties should be allowed to use such amount when necessity requires during the long irrigation season. In addition thereto, during the remainder of the year, the parties shall be entitled to a sufficient quantity of water for domestic uses and for watering livestock upon the old Foster ranch, not exceeding .25 of a second-foot, except in extremely cold weather when it is necessary to make a greater allowance for freezing. This will naturally be at a time when there is no irrigation. The amount of water hereby awarded is to be measured at the headgate or intake of the main Foster ditch.

The water awarded to the parties shall be measured and used, and the decree herein administered in accordance with the following restrictions and conditions: The diversion and use of the waters of Foster Creek shall be in connection with the irrigation of the land described, or other usual and beneficial purposes for which the parties are decreed a right of use, at all times, as against defendant and those having subsequent rights, without let or hindrance. Whenever the water is not required by the appropriators above named who have a prior right to its use, they shall permit it to remain in the natural channel of the stream where it is wont to flow. The defendant or those having subsequent rights shall be entitled to the use of such water and to divert the same to the extent of his or their rights, or appropriations, according to the order of their priority rights after the necessary amount herein decreed for the old Foster ranch is supplied. At all times the waters diverted shall be beneficially, economically and reasonably used without waste by those having a right to use the same by reason of their priority. No right is hereby granted or allowed, to

divert a greater quantity of water into the head of the ditch or ditches of either of the parties than such appropriator can beneficially use for the purposes for which the water is to be put. In no event shall the water diverted exceed the quantity herein awarded, or exceed the amount necessary for the proper and beneficial irrigation of such land and actually put to beneficial use.

In order to avoid waste the parties to this suit shall on or before April 1, 1924, repair their ditches and flumes used for the transportation of such water, keep the same in reasonable repair and condition so as to prevent unnecessary waste of water and repair the ditches so as to provide a reasonable grade for the flow of water and obviate water standing in places. This can be done without building concrete or new ditches, and at a reasonable expense.

It is insisted by defendant that the right to use the water of Foster Creek on twelve acres in the south part of the old Foster ranch has been lost by abandonment. The testimony does not support this contention.

It is also suggested in the brief of defendant that the plaintiffs have not pleaded an estoppel of the defendant; but we do not so understand the complaint. The facts pertaining to the construction of the ditch are all set forth therein and plaintiffs' rights asserted. The complaint is sufficient in this respect under the ruling in *Grand Prize Hydraulic Mines* v. *Boswell,* 83 Or. 1–20 (151 Pac. 368, 162 Pac. 1063), and *Carlyle* v. *Sloan,* 44 Or. 357, 369, 370 (75 Pac. 217).

The defendant, upon proper application, obtained a permit from the state engineer of the State of Oregon to appropriate from the public waters of Foster Creek one eightieth of one cubic-foot of water per

second or its equivalent in case of rotation, for each acre irrigated of 140 acres of land located in the northwest quarter of the southwest quarter, the southeast quarter of the southwest quarter, and lots 3 and 4 in section 11, the east one half of the northwest quarter, lots 1 and 2 and the east half of the southwest quarter of section 14, and the east one half of the northwest quarter of section 23, all in township 32 south, range 16 east, W. M. Such permit limits the amount of water appropriated to that which can be applied to beneficial use, not to exceed 1.75 cubic-feet per second or its equivalent in case of rotation. The priority date of his permit is May 9, 1916. Subject to the prior rights of the owners of the old Foster ranch herein awarded, and after the supply of such amount as a prior right, the defendant is entitled to use the water from Foster Creek in accordance with his permit which is dated May 9, 1916.

The defendant's use of the waters of Foster Creek is subject to the restrictions and conditions of the decree to be rendered herein.

3. It is alleged in the complaint and shown by the testimony that in order to provide for the more convenient transportation for a small quantity of water, James A. Foster, the predecessor in interest of the plaintiffs and defendant, owners of the old Foster ranch, with the consent of the defendant Ralph Foster so to do, entered upon Foster Creek at a point in the southeast quarter of the southwest quarter of section 14, township 32 south, range 16 east, W. M., and constructed a ditch leading from the stream across the east one half of the southwest quarter of the southeast quarter of said section 14, the property of defendant, and to about five acres of land of the old Foster ranch. The ditch was constructed at

considerable labor and expense by plaintiffs' predecessor in interest who relied upon the agreement with defendant that the senior Foster could so construct the ditch. It is shown that defendant Ralph Foster assisted in the construction of the ditch and soon after the construction thereof, with the assistance of another brother, diverted from the ditch a quantity of water and conducted the same to a fish pond on the land of defendant, and afterwards from there to an alfalfa meadow on defendant's land, and also used a portion of the ditch constructed by the elder Foster for transporting water to other portions of his land. Plaintiffs allege and contend that under these conditions they obtained a right to maintain such ditch for the transportation of water to the five acre tract in the northwestern portion of the old Foster ranch. The defendant regards the arrangements as a revocable license to construct the ditch. The circumstances were somewhat involved between the different members of the family, but it would seem that the arrangement amounted to more than a license. The construction of the ditch was a common enterprise entered into by James A. Foster and defendant Ralph Foster for their mutual benefit. The ditch has been used several years for such purposes. It was a benefit to the Ralph Foster ranch the moment it was constructed. It is not designed by defendant to obliterate the ditch. The use of it is the matter of contention. The water right of plaintiffs does not depend upon the ditch. In equity and good conscience the owners of the old Foster ranch should be permitted to maintain and use the ditch constructed by the elder Foster in accordance with the mutual understanding and arrangement: *Heisley* v. *Eastman,* 102 Or. 137 (202 Pac. 872); *Fraser* v. *Portland,* 81 Or. 92 (158 Pac. 514, 9 A. L. R. 614);

*Shaw* v. *Proffitt,* 57 Or. 192 (109 Pac. 584, 110 Pac. 1092, Ann. Cas. 1913A, 63); *Ewing* v. *Rhea,* 37 Or. 583, 586 (62 Pac. 790, 82 Am. St. Rep. 783, 52 L. R. A. 140); *Bowman* v. *Bowman,* 35 Or. 279, 281 (57 Pac. 546); *North Powder Co.* v. *Coughanour,* 34 Or. 9 (54 Pac. 223).

In *Lavery* v. *Arnold,* 36 Or. 84 (57 Pac. 906), at page 86, we read the following, by Mr. Justice MOORE:

"It has been held in this state that a parol license to do some act upon the servient estate connot be revoked after the licensee, relying upon the faith thereof, has expended money or performed labor in making valuable and permanent improvements upon real property: *Coffman* v. *Robbins,* 8 Or. 278; *Huston* v. *Bybee,* 17 Or. 140 (2 L. R. A. 568, 20 Pac. 51); *Combs* v. *Slayton,* 19 Or. 99 (26 Pac. 661); *Curtis* v. *La Grande Water Co.,* 20 Or. 34 (10 L. R. A. 404, 23 Pac. 808, and 25 Pac. 378); *McBroom* v. *Thompson,* 25 Or. 559 (42 Am. St. Rep. 806, 37 Pac. 57); *Garrett* v. *Bishop,* 27 Or. 349 (41 Pac. 10). But such license must result from some consideration paid by the licensee or some benefit accruing to the licensor, * * *"

The defendant contends that the circumstances in relation to the construction of the ditch in question do not bring the case within the rules mentioned in the cases decided by this court; and that there is no sufficient evidence to show that the ditch was built to aid defendant in irrigating his own land, or to benefit his land.

The senior Foster is dead, but the natural result of the construction of the ditch was to benefit defendant's land, whatever may have been the language used by the parties. The agreement in regard to the ditch was in the nature of a partnership arrangement. Its construction accrued to the benefit of the defendant in the use of the fish pond, in the

propagation of fish, and in the irrigation of his land, as well as being a convenience to the senior Foster.

It is stated in the books in substance, that a parol license to construct and maintain a ditch upon another's land for the purpose of taking water to the licensee's land, is revocable at will at common law, especially in so far as the license has not been executed, even though the licensee may have incurred expenditures of money upon the land of the licensor upon the faith of such license. This rule is applicable in several states so far as it applies to unexecuted licenses. But there is an exception in some of them, notably Pennsylvania, Indiana and Iowa, in the case of executed licenses, when the licensee has incurred expenses in the execution of the same, equity in such case holding, for purposes of remedy, that such shall be deemed an executed contract. The doctrine that equity will interfere in some cases of oral license to prevent great damage to the licensee from the revocation of the license, appears to be gaining ground. New York and Connecticut and other states which formerly adhered to the old common-law doctrine have fully accepted the equitable rule. The principle is upheld that where two persons have entered into a complete legal contract for a license founded upon a valuable consideration, the terms of which are defined by satisfactory proof and accompanied by acts of part performance, unequivocally referable to the supposed agreement, equity will regard such a contract as creating an easement and will enforce the same. The terms of the contract should be plain and definite: Washburn's Easements, pp. 28, 29; 25 Cyc. 646.

In Colorado, in the case of *De Graffenried* v. *Savage* (Colo.), 47 Pac. 902, where a parol license to enter and construct a ditch over land by gratuitous consent of the owner, after entry and construction of the ditch for irrigation, by the expenditure of money, and its use for two years, it was held that the licensor could not resort to the summary remedy of obstructing or destroying the ditch or preventing the licensees from entering upon the line of the ditch to operate it.

It has been held that a license under which the licensee has constructed a levee on the licensor's land cannot be revoked, where the revocation would cause great and irreparable injury to the licensee's land; and a court of equity on the ground of equitable estoppel, will enjoin the licensor from subsequently tearing down the levee: 25 Cyc. 646. The doctrine of equitable estoppel in such cases has been adopted in this state and applied where the facts were not as strong as in the case in hand. For a full discussion of an oral license we need only refer to the opinion of Mr. Justice HARRIS in *Heisley* v. *Eastman*, 102 Or. 137 (202 Pac. 719).

In the present case, as stated, it is not sought by the defendant to destroy the ditch, but after it has been constructed under the circumstances detailed, he seeks in effect to appropriate it to his own exclusive use and benefit. To illustrate the difference in the case at bar from many other cases, if a railroad company should build a railroad over land of another without obtaining a right of way by grant or otherwise, but with oral consent of the land owner, after the construction of the railroad it would hardly seem that equity would permit the land owner to appropriate the railroad. No doubt he would have a right of action for damages: See *Lacy* v. *Arnett*,

33 Pa. St. 169; *Messick* v. *Midland R. Co.,* 128 Ind. 81, 27 N. E. 419. So, in the present case, it would hardly be in conformity to equitable principles for the defendant to appropriate the ditch constructed by himself and his father under a family arrangement somewhat analogous to a partnership. The question of damages is not in this case.

Defendant has not shown facts which warrant a court of equity in restraining the plaintiffs from using the ditch across defendant's land.

Two parallel ditches should not be constructed over defendant's land. Defendant is entitled to use this ditch for conveying water to irrigate his own land by enlarging the same, if the capacity of the ditch is not great enough to serve the needs of all parties interested.

4. Where it appears that parties to a suit to determine water rights are mutually benefited by the result arising from an adjustment of conflicting claims on the stream, the court may in the exercise of its discretionary powers adjudge that each party pay his own costs: *Hough* v. *Porter,* 51 Or. 318 (95 Pac. 732).

We think it would be in accordance with equitable principles and conducive to domestic harmony for the plaintiffs and defendant to work together in brotherly love in paying their own costs in this court and also in the Circuit Court.

The decree of the trial court should be modified in accordance herewith. It is so ordered.

Modified.

McBride, C. J., and Brown and McCourt, JJ., concur.