Argued at Pendleton October 27, reversed December 22, 1925, rehearing denied January 26, 1926.

'ALVA SPRINGER AND MARY M. BUNYARD, ADMX., *v.* WILLIAM DUNN ET AL.

(241 Pac. 991.)

**Waters and Watercourses—Appropriator Held Entitled to Enjoin Interference With Supply, Though Appropriation was not Prior in Time.**

1. Fact that plaintiff's appropriation of water was not shown to be prior to that of defendant's does not defeat suit to enjoin interference with water supply, since, if appropriations were equal in time and right, defendants would not have right to use all water to exclusion of plaintiffs.

**Waters and Watercourses—Court Should, When Possible, Determine Right of Respective Parties to Water.**

2. When suit is instituted to restrain use of water, and proper issues are raised, Supreme Court should, when possible, determine right of respective parties, even though necessary to remand cause for further pleadings and proofs.

Waters and Watercourses—Adjudication of Water Rights in Controversy Proper, Though All Rights are not Adjudicated.

3.   Where, because of fact that large corporation owned most of land along stream, it might be considerable time before general adjudication of all water rights would be made, present controversy to enjoin interference with water rights should be adjudicated in present proceedings.

Waters and Watercourses—Complaint to Restrain Interference With Supply Held to State Cause of Action.

4.   In suit to establish rights to water supply for irrigation and to restrain interference therewith, complaint *held* to state cause of action.

Waters and Watercourses—Evidence Held to Prove Prior Appropriation.

5.   In suit to establish right to water for irrigation and to restrain interference therewith, undisputed testimony that for miles defendant company was using water on large tracts of dry sagebrush, land never irrigated before, *held* sufficient to prove appropriation of water prior in time and superior in right to that of defendants as to portion of water whose appropriation was sufficient for use of plaintiffs.

Waters and Watercourses—Prior Appropriator Entitled to Take Sufficient Water from River to Irrigate Lands.

6.   Where parties had right, through prior appropriation of overflow waters, to water for irrigation, they should be allowed to take sufficient amount of water from channel of river to irrigate lands.

Waters and Watercourses—Appropriator Required to Bear Share of Expense of Constructing and Maintaining Dam.

7.   Parties having right to water supply for irrigation by prior appropriation, and entitled to use of channel of river to irrigate their lands, should bear fair share of expense of constructing and maintaining dam in river necessary to irrigation of their land, and also of keeping channel of such ditch in proper condition and repair.

Waters and Watercourses—Neither Party to Suit to Enjoin Interference With Water Rights Allowed Costs.

8.   In suit to establish rights to water for irrigation and restrain interference therewith, where plaintiffs were not diligent as they should have been in constructing dams and levees made necessary by change in condition, probably because not understanding their rights, neither they nor defendants will be allowed costs.

---

Waters, 40 Cyc., p. 700, n. 73, 79, p. 732, n. 14, p. 734, n. 32. p. 735, n. 41, p. 737, n. 67, p. 738, n. 70, p. 813, n. 53.

From Harney: DALTON BIGGS, Judge.

In Banc.

This is a suit to establish the rights of plaintiffs to water from the Blitzen River for irrigation, and to restrain the defendants from interfering therewith. Considerable testimony was taken in the Circuit Court and thereafter the court dismissed the suit without adjudicating any of the rights. Plaintiffs appeal.

The history of the situation is given as follows: The Blitzen River is a non-navigable perennial stream, having its source in the Stein Mountains in the southern portion of Harney County, Oregon, and flows in a northerly direction into Malheur Lake. About 50 miles south of Malheur Lake the main portion of the Blitzen River emerges from the gorges of the Stein Mountains into Blitzen Valley, and flows with a slight fall northward creating many vast swamps and marshes. These swamps and marshes would annually fill with water during the freshet season and would gradually pay this water into Malheur Lake. Vast stretches of this valley contain no regular channel of Blitzen River and the water simply percolated through the swamps. In places there were channels that would extend for a short distance and then these channels would divide and subdivide, and entirely disappear in swampy places. In 1887 Blitzen Valley was surveyed down to the shore line of Malheur Lake, which is a vast swamp rather than a lake which is fed by the run-off of the Blitzen River from the south and the Silvies River from the north.

The Eastern Oregon Livestock Company, an Oregon Corporation, owns one of the largest stock ranches in the northwest, comprising more than 100,000 acres of land in the valleys of the Blitzen River and along its tributaries. This property is known

and generally referred to as the "P. Ranch" and was first improved by Peter French, one of the owners and members of the old French-Glenn Company. This ranch has been handled as a whole until about 1917 when the present owner commenced disposing of tracts along the southern and eastern borders of the holdings. When the original government surveys were run, the lake tract was meandered and left unsurveyed. The French-Glenn Company acquired lands to and adjoining the southern meander line, this portion of the property being known as the "Sod House Ranch." Considerable areas around the the lake tract at various places at the time of the survey were not annually submerged and consisted of ordinary wild grass lands of that vicinity. This area was increased by the changed condition of the outflow of water from the lake. These lands within the meandered line were settled upon by some of the smaller stockmen in the country, and afterward a resurvey was ordered and made establishing a new meander line boundary of Malheur Lake and subdividing the area between that and the former line.

The plaintiff, Alva Springer, and his father, Lewis B. Springer, were each allowed and perfected a homestead entry on adjacent tracts between the two meander lines, upon a settlement made by them in 1888, and the title was perfected about 1897. Alva succeeded to the title of his father and has resided upon and continuously used these lands as a stock and hay ranch since 1888. The land of Mary M. Bunyard, as administratrix of the estate of James H. Bunyard, deceased, are of the same general character as the adjoining Springer land. They were settled upon at the same time and have been occupied and used continuously since 1888.

117 Or.—3

As the Blitzen River crossed the Sod House Ranch there were two side channels leaving the main one, extending in a westerly and northwesterly direction, a short distance and spreading or flattening out. Just below the lower of these westerly branches was a large depression referred to in the testimony as a pond or small lake. Apparently when the waters collected in this pond, according to some of the testimony, they overflowed or drained off through a natural channel extending nearly north, known generally as the "Bull Field Ditch." It is described by some of the witnesses as a ditch and by others as a natural channel. After a time it seems levees were constructed on each side of the ditch through the lake and the lake was drained.

In 1888, prior to and since, all of the lands of the plaintiff were well irrigated and overflowed under this natural river system, receiving their water supply through two channels. The lower and easterly portions of the land were supplied and overflowed from the east branch of the Blitzen River and the built-up lands, comprising the westerly portions of the ranches, from the Bull Field ditch or channel.

REVERSED.    REHEARING DENIED.

For appellants there was a brief and oral argument by *Mr. C. B. McConnell.*

For respondents there was a brief over the name of *Messrs. McCulloch & Duncan,* with an oral argument by *Mr. Duncan.*

BEAN, J.—The first question in the suit necessary to dispose of is raised by defendant, that the complaint does not state facts sufficient to constitute a cause of suit. We find no demurrer filed to the com-

plaint. The gist of the complaint may be generally stated thus: that plaintiff, Alva Springer, for more than 30 years, has been the owner in fee and in possession of the land in Harney County, Oregon, described as lots 5 and 6 in section 34; lots 5, 6, 7 and 8, the SE. ¼ NE. ¼; W. ½ NE. ¼ and SE. ¼ NW. ¼ of section 35, all in Township 26 South, Range 31 East, W. M., south of Malheur Lake.

James H. Bunyard, his predecessors in interest, and the Bunyard estate have been for more than 30 years, last past, the owners of land situate, lying and being in Harney County, Oregon, described as lots 1, 2, 3, 4 and the S. ½ SW. ¼ and lots 1 and 2 in section 27; the N. ½ NE. ¼ of Section 34; and the NE. ¼ NE. ¼ and N. ½ NW. ¼ of Section 35, all in Tp. 26 South, Range 31 East W. M., south of Malheur Lake.

After describing the Blitzen River and the manner in which the lands in that section of the country are watered, plaintiffs allege that during all the times that the lands hereinbefore described have been owned by the plaintiffs and their predecessors in interest, the plaintiffs and their predecessors in interest have, during each and every irrigation season, used the waters of the Blitzen River for the purpose of irrigating said lands, and there has always been a sufficient quantity of water to properly irrigate all of the said lands except when prevented by the acts of the defendants herein complained of.

The irrigation season extends from April 1st to August 1st; all of the water which flows through the Bull Field ditch is required to furnish irrigation for the higher portions of plaintiffs' lands; that about April 21, 1919, defendant Dunn wrongfully and unlawfully placed a headgate, dam and an obstruction of a permanent nature in and across the Bull Field

ditch channel as it crosses the lands of the defendant
Eastern Oregon Livestock Company and forced the
water out of the channel to the westward for use
upon the lands of said defendant; "that had thereto-
fore not been irrigated by the waters of Blitzen River
or by means of said channel," and thereby deprived
plaintiffs of the use of the water flowing through said
channel.

In the year 1913 the predecessors in interest of de-
fendant, the Eastern Oregon Livestock Company,
commenced the construction of two large canals from
and connecting with the Blitzen River at or near
what is commonly known as the "Rocky Ford Lane"
as the same crosses the P. Ranch in Tp. 28 S., R. 31
E, the same being about 12 miles south of plaintiffs'
lands. One of said canals is located on the west side
of the river and runs in a northerly and north-
westerly direction along or near the western limits
of the holdings of said company, and one canal on the
east side of the river, running in an easterly and
northeasterly direction along and near the eastern
boundary of said ranch. That both of said canals
pass through and are intended to cover and irrigate
the higher and dry and arid portions of said P.
Ranch, which are now uncleared of sagebrush and
natural growth of vegetation, and that none of said
lands so traversed by said canals has ever been
cleared, cultivated or irrigated and that none of the
water of the Blitzen River has ever been used thereon
until within the past two years.

The defendant, the Eastern Oregon Livestock Com-
pany, since acquiring possession and control of said
P. Ranch, has improved, enlarged and extended said
canals on both sides of the river, and have constructed
dams and headgates therein to divert the water there-
from on to said dry lands, and have constructed

and are now maintaining a permanent rock and earth dam in and across the channel of the Blitzen River below the intake of said canals to and which does raise the water to the level of the banks of the stream and diverts and forces it out through said canals. That the capacity of said canals is sufficient to carry the entire flow of water which can come down through the channel of the main river at said point of diversion in all ordinary stages of the flow of said stream. That holding up and obstructing the flow of said stream at said point interferes with and deprives the lands of plaintiffs of the use of the waters of said river as the same has been wont to flow down to and upon said lands.

During the irrigating season of 1918 the defendant, Eastern Oregon Livestock Company, unlawfully placed said dam and obstruction in and fully across the channel of the Blitzen River and by means thereof checked and retarded and diverted practically all of the water from said river away from plaintiffs' lands and upon the lands of defendants that had not theretofore been irrigated; that during the present (1919) irrigating season said defendant has again used said dams for the purpose of irrigating portions of said dry lands at the upper ends of said canals and has been and is thereby depriving the lands of the plaintiff of the use of water to which they are entitled; that the defendants seek to maintain said dams, headgates and obstructions by them in the Bull Field ditch and in the Blitzen River.

The defendants answered the complaint and denied many of the allegations thereof and for a further answer aver that the defendant Eastern Oregon Livestock Company is the owner and in the exclusive possession of the following described lands situated in Harney County, State of Oregon (here follows the

description of the lands situated on the Blitzen River between what is commonly called Rocky Ford Land and Malheur Lake), and that all of its lands are desert in character and require artificial irrigation. That the annual irrigation season of such lands extends from about April 1st to September 1st of each year; that years ago the predecessor in interest of defendant, Eastern Oregon Livestock Company, formulated, prepared and adopted definite plans for an extensive system of drainage and irrigation for the reclamation and irrigation of many thousand acres of land in what is known as the Diamond Swamp and the Blitzen Swamp, as well as on the arid lands of the Blitzen Valley. That this system contemplated the construction and maintenance of several large canals and ditches with the necessary dams, headgates and check-gates; that the predecessor in interest of defendant began work on said canal through said Blitzen Swamp and carried on said work until the same was completed, which includes a canal about 25 miles long, 30 feet wide on the top and 9 feet deep, extending entirely through the Blitzen Swamp and connecting with the regular channel of the Blitzen River furnishing a clean channel for said river, through its entire length.

That the Eastern Oregon Livestock Company and its predecessors in interest in pursuance of said plans has also dug two other canals which connect with the Blitzen canal, or Blitzen River, one of which is known as the Busse canal, which diverts water from the Blitzen River in Section 22, Tp. 28 S., R. 31 E., W. M., and carries the water along the east side of said Blitzen Valley and is used for the purpose of irrigating all of the lands lying in said Blitzen Valley on the east side of the main channel of the Blitzen

River between what is commonly called Rocky Ford Lane and Malheur Lake.

Another canal is taken out of the Blitzen River and Blitzen canal in Section 22, Tp. 28 S., R. 31 E., W. M., and carries water on the west side of the said Blitzen Valley and is used to irrigate all of the lands in the said Blitzen Valley belonging to the Eastern Oregon Livestock Company, and lying west of the main channel of the Blitzen River, between what is commonly called Rocky Ford Lane and Malheur Lake. Said work has caused an expenditure of $300,000.

For more than 10 years the Eastern Oregon Livestock Company has diverted and used the entire flow of the Blitzen River, through the east side ditch and the west side ditch above mentioned, as taking water out of said Blitzen River and Blitzen canal in Section 22, Tp. 18 S., R. 31 E., W. M., and has used all of said water in the irrigation of the lands above described as being situated between Rocky Ford Lane and Malheur Lake.

Defendants aver that they constructed the Bull Field ditch and have maintained the same. That the slope of the country in the vicinity of plaintiffs' lands is from the south to the north and that during the years complained of the overflow and seepage waters from defendants' lands has been so that the plaintiffs have not been deprived of any water for irrigation on account of these defendants. The reply put in issue the main part of the new matter contained in the answer.

1. It is argued by defendants that plaintiffs have not shown that their appropriation is prior to the appropriation of defendants and this "must defeat his claim." We do not see how such a conclusion would necessarily follow. If the appropriations of

the plaintiffs were equal in time and right to that of defendants, then the defendants would not have the right to use all of the water to the exclusion of plaintiffs.

Taking it all in all it does not seem that the defendants contest the right of plaintiffs to the use of water from the Blitzen River but suggest that there is probably enough for plaintiffs' needs with the works and operation of the defendants being maintained; that is, enough from the seepage and overflow from the lands of defendant Eastern Oregon Livestock Company. It is stated in defendants' brief:

"There is no question about the method of irrigation on Blitzen River being wasteful and that it does not produce the best results. Yet, to allow the water right claimed by plaintiffs would be, in effect, a judicial decree requiring the defendants to perpetually maintain this wasteful system on its lands in order that the plaintiffs could collect in the borrow pit of the county road a sufficient amount of water to irrigate some seventy acres of high land * * ."

We think the matter, as far as the plaintiffs are concerned, can be arranged so that all the parties can proceed with their improvements in irrigation. The defendant, Eastern Oregon Livestock Company, has constructed two large canals taken from the river several miles above the lands of plaintiffs. It appears that from the Stubble field canal, on the west side of the river, this defendant has watered quite a large area of dry land that had not theretofore been irrigated, and this during times since 1917 when the plaintiffs were deprived of a sufficient amount of water. Defendant Dunn endeavored to divide the water in Bull Field ditch with plaintiff, but the amount was insufficient and we think this shortage was caused, as shown by the evidence, by the amount

of water diverted by the defendant, Eastern Oregon
Livestock Company through the canals above.  In-
deed, this defendant alleges in the answer that it
has used the entire flow of the water of the Blitzen
River through its canals for more than a year,
although this claim was not stressed in the proof.

2. It has been the policy of this court whenever a
suit is instituted to restrain the use of water, and
proper issues are raised, that the court should, when
possible, determine the right of the respective parties
even though it might be necessary to remand the
cause for that purpose for further pleadings and
proofs: *Hough* v. *Porter,* 51 Or. 318 (95 Pac. 732, 98
Pac. 1083, 102 Pac. 728); *Foster* v. *Foster,* 107 Or. 355
(213 Pac. 895); *Eastern Oregon Live Stock Co.* v.
*Keller,* 108 Or. 256 (216 Pac. 556).

3. There are but a few individual water users on
the Blitzen River, the defendant Eastern Oregon Live-
stock Company owning most of the land.  Therefore,
it may be a long time before a general adjudication
of all the rights to the waters of this stream system
will be made.  It is deemed best for all concerned
that the controversy be adjudicated as far as possible
in this proceeding.

The defendant Eastern Oregon Livestock Com-
pany has a large area of meadow-land that has
been naturally irrigated and perhaps is entitled to
a water right coequal with plaintiffs, and has con-
structed a system of works for extending its irriga-
tion which can probably be done without interfering
with or encroaching upon the rights of other water
users.  Still it is believed that the plaintiff can be
awarded the rights to which they are entitled to use
water through the Bull Field ditch channel and un-
doubtedly leave enough for the satisfaction of the
water rights of defendants which are equal in right

to plaintiffs. The plaintiffs made a request for water of the defendant company at the time they were short, and were refused.

4. We think the complaint states a cause of suit. The plaintiffs, in effect; allege and prove that they had an appropriation provided by nature, accepted and used for a beneficial purpose in the irrigation of their lands since 1888, or as soon as the surplus water was taken from their lands so that they required irrigation.

Some of the fundamental questions in this case, governing the rights of the parties herein, were considered in the cases of *In re Willow Creek,* 74 Or. 592 (144 Pac. 505, 146 Pac. 475); *In re Silvies River,* 115 Or. 27 (237 Pac. 322, 345). Therefore, the matters relating to the natural irrigation of the land and its effect upon the inception of the appropriations of the water users, and the change of conditions in transforming· a natural system to a control system, need not be detailed here. See, also, *McCall* v. *Porter,* 42 Or. 49, 55 (70 Pac. 820, 71 Pac. 976); *Cascade T. Co.* v. *Empire Co.* (C. C.), 181 Fed. 1011; *Thomas* v. *Guiraud,* 6 Colo. 530, 533; *Larimer* v. *People,* 8 Colo. 614 (9 Pac. 794); *Utt* v. *Fry,* 106 Cal. 392, 396 (39 Pac. 807, 808). Plaintiffs aver and show by the evidence that the defendants have deprived them largely of this water during the seasons of 1917, 1918 and 1919.

It is useless to devote time to describing the different portions of the Blitzen River or to determine just when the lakes, ponds or marshes or streams were changed, so that a portion of an arm of the river, such as the Bull Field ditch, on account of the artificial construction of dams, levees and cuts, would no longer be termed a natural channel or pond but a ditch or canal. Suffice it to say that the water pour-

ing into the Blitzen Valley from the mountains is the water of the Blitzen River. Land that has been rightfully irrigated with the water from this river should not be deprived of such privilege by the construction of a canal 25 miles long to serve as the main channel of the river, or in straightening and improving the marshes and low swales, where the water formerly gathered and oozed out or flowed toward the lake. The Bull Field ditch or channel, it seems, was formerly fed from a small lake and the water ran along irregular depressions or channels. From this the plaintiff obtained a portion of their water supply. Dams in the main river and the draining of the small lake and other artificial works have changed the conditions. It now requires a dam in the main or east branch of the river, and a headgate to turn sufficient water into the Bull Field ditch channel. Plaintiffs have assisted in a small degree in maintaining such dam. It is in evidence that one of the predecessors in interest of plaintiffs, Mr. R. T. Huget, in 1906, 1907, 1908, 1909 and 1910 did work on the dam to turn water into the Bull Field ditch. Formerly there was no dam to force water into this channel.

About 1890 one Marshall dumped rocks into the channel at the head of the Bull Field ditch channel to to keep water off from his land, which is now the Dunn place; afterward the dam was completed and another was built about 20 feet above, in what used to be called the west channel, which extended only a short distance and was sometimes called a "blind channel." Fortunately there is but little, if any, dispute in the testimony. The question is what deductions are to be made therefrom.

5. We hold that the plaintiffs have pleaded and proved an appropriation of the waters of the river.

which is prior in time and superior in right to that of defendants as to a portion of the water which the defendants use, which appropriation is sufficient for the use of plaintiffs. This is plain from the undisputed testimony that for miles the defendant company is using the water on large tracts of dry sagebrush land that has never before been irrigated.

6, 7. Plaintiffs should be allowed to take a sufficient amount of water from the Blitzen River through the Bull Field channel to irrigate their lands which are not irrigated by water from the east branch of the river lower down. Plaintiffs should be required to perform an equitable amount of the work and bear a fair share of the expense of constructing and maintaining a dam in the river where the dam is now located in Section 2, Tp. 27 S., R. 31, E., W. M., and also their share of the labor and expense of keeping the channel of the Bull Field ditch in proper condition and repair. All of such work of construction to be under the direction of the water-master of the county, and in case any legal questions or dispute arise, the Circuit Court for that county is hereby authorized to hear and determine any question that may be presented, and render any supplemental decree that may be necessary or convenient for carrying out the provisions of the decree herein.

Plaintiff Alva Springer is hereby awarded a right to the waters of the Blitzen River as of date 1888, in amount 1/80 of a second-foot of water per acre for 70 acres, to be taken through the Bull Field ditch, in addition to a sufficient amount of water to irrigate his other land taken out of the east or main branch of the river at a point below the head of the Bull Field ditch, which latter amount is not involved in this suit.

Plaintiff Mary Bunyard, administratrix of the estate of James H. Bunyard, deceased, is awarded a right as of date 1888 to the waters of the Blitzen River in amount 1/80 of a second-foot of water per acre for the Bunyard lands that cannot be conveniently irrigated from the east or main branch of the Blitzen River by means of the ditches from the river at points below the head of the Bull Field ditch channel, said amount to be taken through the Bull Field ditch channel. Said award to be in addition to a sufficient amount of water to irrigate the other Bunyard land from said lower points of the river which is not involved in this suit. The number of acres of the Bunyard land to be irrigated with water through the Bull Field ditch cannot be determined from the record. And in case the interested parties do not agree in regard thereto with the assistance of the watermaster, the Circuit Court for that county is hereby authorized to hear and determine the matter. Each of the awards to plaintiff are subject to the condition above mentioned as to construction and repair. The amount of water per acre, or the duty of water, for such lands shall be left open for further consideration by the Circuit Court until the State Engineer or the courts shall determine and adjudicate the relative rights to the waters of the Blitzen River and its tributaries, under the Water Code or in some appropriate legal proceeding; the water awarded to plaintiff to be measured at the point where it is taken from the Bull Field ditch channel.

It appears there is quite an abundance of water during the month of May; therefore, the irrigation season when the restriction of the amount of water awarded herein shall apply will be fixed as from June

1st to September 1st, both dates inclusive, during each year.

The defendant Dunn takes his right under a contract and conveyance from the Eastern Oregon Livestock Company. Whatever rights the company had as to the use of water upon the land of defendant Dunn are now held by him. The rights of the defendants cannot be definitely determined from the record and they do not request such a determination.

The defendants will be restrained from preventing the plaintiffs using the water from Blitzen River in the manner and during the time herein mentioned.

8. The plaintiffs may not have been as diligent as they should have been in constructing dams and levees, etc., necessitated by the changed conditions of the stream, in order to turn a sufficient amount of water into Bull Field ditch, probably on account of not understanding their rights in the premises; therefore, neither party will be allowed costs in either court in this suit.

The decree of the Circuit Court will be reversed and one directed to be entered in accordance herewith.

REVERSED WITH DIRECTIONS.        REHEARING DENIED.

Justice RAND did not sit in this case.